**CALCASIEU INV. CO., Inc., v. CORBELLO'S HEIRS.** [*]

No. 1718.

Court of Appeal of Louisiana.
First Circuit.

June 9, 1937.

*Rehearing denied July 30, 1937.

. Robert R. Stone, of Lake Charles, for appellants.

McCoy, King & Jones, of Lake Charles, for appellee.

OTT, Judge.

This is a suit to quiet and confirm a tax title. The property was assessed in the name of D. C. Corbello for the year 1929, and was sold for the state and parish taxes of that year on June 21, 1930, Levy Hebert being the tax purchaser. The property sold is described as the S. ½ of S. E. ¼ of S. E. ¼ of section 11, Tp. 9 S., R. 6 West, in Jefferson Davis parish. The original tax debtor having died, this suit is against his heirs.

Several exceptions were filed by defendants and passed on by the trial court, but, as these exceptions are not urged on this appeal, we will give no further consideration to them.

Defendants admit the tax sale but set up certain defects and irregularities which they contend render the tax sale null and void. The trial court rendered a judgment in favor of plaintiff confirming the tax title and recognizing plaintiff as the owner of the property, and enjoining the defendants from claiming ownership of said property.

It is proper to state here, before taking up the defenses urged, that the plaintiff acquired the property on December 29, 1930, from the Southwest Louisiana Farm Mortgage Company, Inc.; and the latter company acquired the property from the tax purchaser on August 5, 1930. It is also well to state here that the original tax debtor, D. C. Corbello, remained in possession of the property up to a short time before his death in the fall of 1934. This suit was filed in September, 1935; therefore, plaintiff and its authors in title had not been in possession of the property for a sufficient length of time to enable them to plead the prescription of pre-emption provided for by article 10, § 11, of the Constitution, and defendants were not precluded from attacking the legality of the tax title through which plaintiff claims. Kivlen v. Horvath, 163 La. 901, 113 So. 140.

We will take up and discuss separately the various grounds of illegality urged by defendants against the tax title which plaintiff is now seeking to have quieted and confirmed under the provisions of Act No. 106 of 1934.

1. The first ground of attack on the title is that the tax debtor was not given notice of his delinquency for the taxes of 1929 prior to the tax sale as required by sections 50 and 51 of Act No. 170 of 1898, as amended. Section 50 requires the tax collector to address a written or printed notice to the tax debtor advising him that, unless he pays the taxes due by him on immovable property within 20 days after service or mailing of said notice, the property will be sold according to law for the payment of the taxes. Section 51 provides that this notice shall be served by a registered letter addressed to the tax debtor, except in cities having a population of over 50,000, the tax collector may make personal or domiciliary service on the tax debtor,

or send the notice by registered mail. After the notice is given, the tax collector is required to make out a procès verbal stating therein the names of the delinquents notified, their post office addresses, a brief description of the property, the amount of taxes due, and how the service of notice was made. This procès verbal shall be received by the courts as evidence.

It is admitted that a registered notice of delinquency was sent by the tax collector in April, 1930, addressed to·D. C. Corbello, Lacassine, La., and it is admitted that the above post office is where the tax debtor received his mail. No signed return receipt could be found in the sheriff's office showing the delivery of this registered letter to the tax debtor. However, the register receipt book of the post office at Lacassine, La., shows that a registered letter, No. 2584, was received at that office on April 21, 1930, from the Jennings office, addressed to D. C. Corbello, and that this letter was delivered on April 27, 1930, there appearing in the column for the signature of the addressee, the name, D. C. Corbello.

C. N. Corbello, the son of the deceased tax debtor, testified that he had seen the signature on the post office register in which the name of. his father was signed as having received the registered notice; that the signature therein was not that of his father, who was an uneducated man, barely able to write his name; that he was familiar with his father's signature from having seen him write it many times. This witness identified the signature of his father on three notes which were introduced in evidence for comparison with the signature on the register receipt book, but, as the original sheet containing this receipt in the post office register was not filed in evidence, we are unable to make any comparison.

An assistant in the post office at Lacassine who signed her initials in the register as witnessing the receipt or dispatch of this particular registered letter was unable to state whether or not D. C. Corbello signed the register receipting for the letter, nor could she remember who signed for and received the registered letter. It is thus made somewhat doubtful whether or not the tax debtor actually received·this registered letter containing the notice of delinquency.

However, as it is admitted that the tax collector mailed the notice to the proper address of the tax debtor by registered letter as required by law, the failure of the tax debtor to receive the notice would not invalidate the tax sale. Carey v. Green, 177 La. 32, 147 So. 491; Page v. Pitts et al., 16 La.App. 145, 133 So. 460. When the tax collector complies with the law by sending the registered .notice to the tax debtor at his proper post office address, there is nothing further for the collector to do before selling the property, and, should it later develop that as a matter of fact the delinquent tax debtor did not receive the notice, the sale would not thereby be rendered invalid. Avery v. Mayo et al., 161 La. 699, 109 So. 393.

The registered letter mailed by the sheriff was not returned and there was nothing to indicate to him at the time of the sale that the delinquent had not received the notice.

■ 2. Two other alleged grounds of nullity may be considered under the same head. It is alleged that the property was sold for less than the amount of interest due, and that an overcharge of some $1.05 was made in the cost of advertising. The amount of taxes due on the property was $6.50, on which the sheriff charged interest of 27 cents. It is contended that the interest should have been 31 cents, or a difference of 4 cents. The revenue law fixes the rate of interest on delinquent taxes at 10 per cent. per annum beginning from the last day of the year in which the taxes are due. Therefore, on June 21, 1930, the date of the tax sale, interest was due on the amount of taxes of 1929 for 5 months and 21 days. At 10 per cent. per annum the interest on $6.50 for this time would be .3087 cents, or, eliminating the fractions of a cent, 31 cents. Figuring the interest separately on each of the five items of the tax to five decimal points, we get the amount of interest as .3088 cents or practically the same as by figuring the interest on the tax as a whole.

We may thus accept as a fact that there was a shortage in the interest collected of 3 or 4 cents caused from a miscalculation. Did this render the sale null and void? Section 53 of Act No. 170 of 1898, as amended, requires that the bid be at least equal to the taxes, costs, and interest; otherwise the property shall be bid in for the state by the collector.

There can be no question but that a sale of property for an amount substantially less than the taxes, interest, and cost is an absolute nullity. Carey et al. v. Cagney

104

et al., 109 La. 77, 33 So. 89. However, the law ignores trifles, and we believe that in a case of this kind, where the mistake in calculating the interest amounted to only 3 or 4 cents, and it appearing that the mistake was not intentional and no injury was done the tax debtor, the maxim "de minimis non curat lex" should be applied. For us to hold that an unintentional miscalculation of interest due in the small amount of 3 or 4 cents invalidates the tax sale would render uncertain and unstable many tax titles, as it is probable that many minor mistakes of this kind are made by the tax-collecting authorities with no intention of collecting more or less than is actually due. We think the correct view is the one adopted in many states where the above maxim has been applied and the tax sale upheld. See 97 A.L.R. 852.

■ The tax deed shows that the charge for advertising was $1.75. It is claimed that the correct charge should not have been over 70 cents. Tax sales are advertised in the same manner as other judicial sales of immovable property. Act No. 82 of 1900 fixes the cost of judicial advertisements at $1.00 per square, or fraction thereof, and 50 cents for each subsequent insertion. Section 53 of the general revenue act, No. 170 of 1898, as amended, provides that each ten lines of nonpareil type of tax sales advertisement shall constitute a square, and shall be paid for by the tax collector as now provided for by law; each delinquent being responsible for the pro rata space of said ten lines occupied by the description of his tax and property. We understand by this that the tax debtor is to pay such proportion of the total cost of the advertisement as the space occupied by the description of his name, address, tax, and property bears to the total space occupied by the description of the name, address, tax, and property of all tax delinquents in the list. In order to determine the correct cost to be charged the delinquent, it would be necessary to know the amount of space covered by the entire advertisement, the space occupied by a description of all the delinquents with their address, taxes, and property, as well as the space covered by that part of the advertisement in the name, address, taxes, and property of D. C. Corbello. The record does not contain sufficient facts for us to determine correctly whether or not there was an overcharge on this item. For instance, if the entire advertisement covered 20 squares of nonpareil type, the total cost would be for the first insertion $20, and for five additional insertions at 50 cents per square the sum of $50, a total of $70. If the total space occupied by a description of all tax delinquents covered 14 squares and that of Corbello's name, taxes, and property one-fifth of a square— 2 lines—his part of the cost would be $1, that is, in the proportion of 2 lines to the total of 140 lines, or 1/70 of $70. It does appear from the testimony that the preamble of the advertisement contained 36 lines and the conclusion 34 lines, but we do not know how many lines there are in the entire advertisement.

■ The presumption is that the officer charged with the duty of collecting the taxes did his duty and made the proper charges, and it is incumbent on the one who attacks the legality of these charges and proceedings to overcome this presumption by clear evidence. Defendants have failed to furnish such evidence.

■ 3. It is alleged in the answer that the plaintiff is the successor of the Southwest Louisiana Farm Mortgage Company, Inc., and that this company was an affiliate of and owned by the Calcasieu National Bank, which bank held a mortgage on the property; that the said mortgage company purchased the property from Levy Hebert, the tax purchaser, to protect the mortgage held by said bank, and that one of the defendants was paying the bank on said mortgage, including, as he thought, the amount which had been paid to cover the taxes on the property.

It is admitted that up to July 1, 1930, the Southwest Louisiana Farm Mortgage Company was an allied institution of the Calcasieu National Bank; but, after that date, these institutions were separate. The evidence shows that the tax debtor, D. C. Corbello, owed the bank a mortgage on this property, on which mortgage one of the defendants had made payments after the tax sale.

The property was purchased at tax sale by Levy Hebert on June 21, 1930, at a time when the mortgage company and the bank were allied institutions, but it does not appear from the pleadings or from the evidence that Hebert purchased the property for either the mortgage company or the bank. When Hebert sold the property to the mortgage company on August 5, 1930, the mortgage company was no longer an affiliate of the bank. In any event, it does not appear that either the bank or the

 

mortgage company had agreed to pay the taxes on the property for Corbello, nor were they under any obligation to do so. There was nothing to prevent the bank, as the holder of the mortgage, to purchase the property at tax sale, if it had desired to do so. Moore et al. v. Boagni et al., 111 La. 490, 35 So. 716.

■ 4. Defendants offered in evidence a tax deed showing that this property had been sold on June 26, 1929, for the taxes of 1928, the Calcasieu National Bank being the purchaser. This prior sale was not set up as a ground of nullity of the tax sale now in question. The plaintiff objected to the introduction in evidence of this prior deed. We think the objection should have been sustained, as this deed is clearly inadmissible in this suit in the absence of any allegations whatever in the answer to this prior deed as a ground of nullity. So far as we know, the property might have been redeemed from this prior sale, or the deed might have been canceled. At least plaintiff was entitled to know in advance of the trial the grounds of nullity relied on by defendants to defeat its tax title.

For the reasons assigned, the judgment is hereby affirmed at the cost of appellants.