Plaintiff brings this suit to quiet a tax title in accordance with Section 11 of Article 10 of the Constitution and Act 106 of 1934. He alleges that he acquired thirty-one (31) acres, located in the Second Police Jury Ward of the Parish of St. Landry, bounded North by Bass, South and East by Public Road, and West by Guidry, at a tax sale of the said property on November 28, 1936, when the said property was offered for sale because of the non-payment of taxes for the year 1935, which purchase was recorded December 17, 1936, in Conveyance Book Tax No. 2, at page 384, of the records of the Parish of St. Landry. He further alleges that Leonce Cormier, defendant herein, the former owner of the property, and his residence, if he is alive, are unknown to him and that therefore a curator ad hoc should be appointed to represent the defendant. A curator ad hoc was duly appointed to represent the defendant, upon whom service and citation were had.
The suit was filed on June 7, 1940, and on July 9, 1940, the curator advised defendant of the filing of the suit by letter addressed to defendant at Lafayette, La. On May 19, 1941, defendant appeared by attorneys of his choice and excepted to the substituted process, averring that his residence was in the City of Lafayette, La., a fact well known to plaintiff, which exception was referred to the merits. However, defendant has not re-urged this exception in this court, and it is presumed to be abandoned. On June 7, 1941, defendant filed his answer, in which he admits the recordation of the tax title, but denies its validity. He further answers, and assuming the position of plaintiff in reconvention, he avers that the said tax sale is null, void and of no effect and should be decreed so on the ground that no notice of delinquency was served on him as required by law and on other grounds not necessary to mention in this opinion.
Judgment was rendered in favor of the defendant and against the plaintiff, annulling, avoiding and setting aside the said tax sale, and ordering the cancellation of its recordation from the public records, said annulment to be effective upon payment to plaintiff, Ashton Miller, of the amount found to be due him under the provisions of Section 11 of Article 10 of the Constitution, at the costs of plaintiff. Plaintiff has appealed.
Defendant acquired the property in question in 1909, while married. He was then living near Carencro, in the Parish of Lafayette, and received his mail at Carencro. When he purchased the property, he moved thereon, and received his mail at Sunset, in the Parish of St. Landry. In 1922, he removed from the Parish of St. Landry to Lafayette, La., and was employed by the Southern Pacific Railway, and his address was Lafayette, in care of the Southern Pacific. He and his wife were judicially separated in June, 1936. In the act of partition dated July 3, 1936, duly recorded in conveyance records for the Parish of St. Landry, defendant received the north half, and granted the usufruct of the same to his wife, and his wife received the south half of the property in question.
The property was assessed to defendant on the assessment rolls of the Parish of St. Landry for the year 1935 under the name of "Leonce Cormier, Carencro". It was likewise assessed for the years 1936 and 1937. For the year 1938 the defendant was assessed for the northern half of the property, and his address was given as Lafayette. While it does not appear how the improper address of defendant was put on the tax rolls, the fact is that the defendant is not responsible for this incorrect address being on the tax rolls.
The taxes were not paid for the year 1935. On September 29, 1936, the Sheriff of St. Landry Parish sent the usual registered notice of delinquency addressed to "Leonce Cormier, Carencro, La.," being the name and address appearing on the rolls, which registered notice arrived at Carencro on Sept. 30, 1936. It appears that some one, presumably connected with the Post Office at Carencro, on October 5, 1936, forwarded the letter or notice to Lafayette, La., where it arrived on October 6, 1936. On October 13, 1936, the registered notice was returned to the sheriff's office, unclaimed and unreceived by the defendant. *Page 84 
The sheriff made no further effort to serve notice of delinquency on the tax debtor, defendant herein, but proceeded to advertise, on October 24, 1936, the property to be sold at public auction on November 28, 1936, and, on that date, did sell the property at tax sale and adjudicated the same to plaintiff herein.
At the time of the tax sale, the property was in possession of defendant's wife, through one of her sons who was occupying the property for her benefit under the usufructuary clause of the act of partition. It is shown that after the separation decree, she, in company with her son, visited the sheriff's office and inquired from the deputy tax collectors, one being a brother of the plaintiff, as to the status of the taxes of 1935, relative to the property and that she was informed that the taxes had been paid. The plaintiff made no attempt to take possession of the property, nor did he have the property assessed to himself. In the fall of 1939, he paid the taxes due for 1939, under the assessments in the name of defendant and his wife. This caused defendant's wife to again inquire from the tax collector as to the payment of the taxes of 1939 and by whom. It was only the bringing of this suit which disclosed that plaintiff had purchased the property and had paid the 1939 taxes. On October 25, 1940, plaintiff realized that the tax deed was null and void in so far as defendant's wife's property was concerned. He retroceded, or allowed defendant's wife to redeem, for the sum of $44.32 ($19.32 being the estimated amount due on one-half of the property by virtue of the tax sale, plus interest, and $16.25, being the amount of the taxes for 1939, plus interest thereon), her southern half of the property.
One of the issues for decision in this case is whether or not the legal notice of delinquency was given, as required by Article 10, Section 11, and also by Sections 50, 51 and 52 of Act 170 of 1898.
The Constitution of 1921, Article 10, Section 11, provides that there shall be no forfeiture for the non-payment of taxes, and further provides that the tax collector shall, without suit, give notice to the delinquent tax debtor in the manner provided by law. Sections 50-52, inclusive, of Act No. 170 of 1898, provide how this notice shall be given. Under these sections, it is the duty of the tax collector to give the delinquent tax debtor, if he be a resident or nonresident taxpayer whose address is known, a notice by registered mail that his taxes on immovable property must be paid within twenty days after the mailing of the notice, otherwise his property will be sold for the non-payment thereof. The tax collector, after having completed the service of the notices as required, shall make out a procès verbal stating therein the names of the delinquents so notified, their post office addresses, a brief description of the property, the amount of the taxes due and how the service of notice was made, and which procès verbal shall be signed officially by him in the presence of two witnesses and filed in the office of the clerk of court in the parishes of this state, other than the Parish of Orleans, for recording and preservation, which said procès verbal shall be received in evidence. As to those who are "unknown owners" and/or those whose residence is unknown, the notice is to be given by publication once a week for two weeks in a newspaper, if there be such in the parish, if not, then by posting. The tax collector shall certify on his tax-rolls that he has published said notices, and said certificates on either shall make full proof thereof until disproved in a judicial proceeding. The present trend of the jurisprudence require a strict and rigid compliance with these provisions to sustain a tax sale or deed and these provisions contemplate that reasonably diligent steps be taken by the tax collector to make the notice effectual.
The uncontradicted testimony is that plaintiff had moved from the Carencro neighborhood in 1909, and that from then on had never received his mail at that address. When he was living in St. Landry Parish his address was Sunset. He moved therefrom in 1922, to Lafayette, and thereafter his address was Lafayette, care of the Southern Pacific Lines. He had not authorized the assessor to show his address on the assessment rolls as Carencro. At the time the assessment for 1935 was made, defendant had been a resident of Lafayette for about thirteen years. His residence was not at Carencro.
The notice was sent to Carencro, then forwarded to Lafayette. This forwarding was not at the request of the tax collector. It was returned "unclaimed" to the tax collector. It is not disputed that the tax collector made no further effort to ascertain the correct address and deliver the notice. Nor did the tax collector advertise in the list of unknown owners or those *Page 85 
whose residence is unknown the property of the plaintiff after the notice was returned. In accordance with the testimony of the two tax collectors, nothing more was done but the sale of the property, a tax adjudication to the plaintiff and the recordation of the deed, thus clearly evidencing that no procès verbal of the giving of the required notice was filed with the clerk of court.
The tax deed of the sheriff makes a prima facie case. The evidence offered by the defendant is sufficient to rebut the presumption as to the regularity of the tax deed, and it then became the duty of the plaintiff to go forward and prove that all requisites for a valid tax sale, including notice of delinquency, were complied with. Pill v. Morgan et al., 186 La. 329,172 So. 409.
As expressed by us in the case of Hargrove v. Davis, 178 So. 198, 200, "There is authority to the effect that where the sheriff sends a registered notice to the proper address of the tax debtor, the failure of the tax debtor to receive the notice will not invalidate the tax sale. Carey v. Green, 177 La. 32,147 So. 491; Page v. Pitts et al., 16 La.App. 145, 133 So. 460; Calcasieu Investment Co., Inc., v. Corbello's Heirs, La.App., 175 So. 101. But in all of these cases the notice was sent to the proper address of the tax debtors, and the failure of the tax debtor to receive the notice was no fault of the tax collector."
In the case of Hargrove v. Davis, supra, we had a case which is similar as to the facts in this case, and we said: "The law which requires the tax collector to serve notice on the delinquent tax debtor before selling his property, contemplates a reasonably diligent effort on the part of the tax collector to make this notice effectual. We think the situation in this case is similar to that in the case of Lee, Jr. v. Givens et al., 18 La.App. 383, 134 So. 775, 777, where the registered notice was not received by the tax debtor because it was sent to an improper address, and was returned to the tax collector undelivered with a notation thereon to that effect. The court in that case said: `When the notice was returned to the sheriff and tax collector with the notation thereon, it was the duty of the sheriff to make inquiries as to the residence of plaintiff, and, if same could not be learned, he then should have given the notice required by Section 52 of Act No. 170 of 1898; that is, by publication of notice, as is prescribed for "unknown owners" and owners whose residence is unknown. As a last resort, he must comply with section 52 in order to satisfy the constitutional requirements of notice to delinquent taxpayers.'"
See, also, Henderson v. Mayer, 12 La.App. 531, 126 So. 531.
We find that the district judge correctly decided the case on this issue which makes it unnecessary to consider the other grounds on which the sale was attacked.
For these reasons, the judgment is affirmed.