GUIDRY, Justice.
_JjWe granted the writ application to determine whether the court of appeal erred in affirming the trial court’s ruling granting summary judgment that confirmed and quieted the title of a tax purchaser on the basis that the former property owner failed to file a separate action or reconven-tional demand to institute a proceeding to annul the tax sale within six months from the date of service of the petition and citation to quiet title.. For the reasons set forth below, we conclude the former property owner’s claim that the tax sales were null and void was timely made and the former property owner has sufficiently established that there remain genuine issues of material fact as to whether the sheriff *752 provided notice of the tax delinquencies and the tax sales to the record property owner as required by the due process clause of the Fourteenth Amendment, failure of which would render the tax sales entirely null and void. Accordingly, we find summary judgment to quiet tax titles in favor of the tax purchaser was not warranted on this record.
FACTS and PROCEDURAL HISTORY
Gulf South Shrimp, Inc., (hereafter, “Gulf South”) owned three tracts of land in Terrebonne Parish, where it apparently operated a shrimp processing plant. Gulf South failed to pay the ad valorem taxes on the properties for tax year 2002. Among other recorded liens, the properties were subject to a mortgage held by | ¡¿First Louisiana Business and Industrial Development Company, L.L.C. (hereafter, “First Louisiana Bidco”), whose name was later changed to Source Business and Industrial Development Company, L.L.C. (hereafter, “Source Bidco”), which has an address on East Airport Road in Baton Rouge, Louisiana. At the time of the tax sale on June 25, 2008, Gulf South’s agent for service was Vincenzo Marsala, with an address at 7382 Caillou Road in Dulac, Louisiana (which was also the physical address of a subject tract). According to the record, the Sheriff of Terrebonne Parish never mailed, either certified with return receipt requested or by ordinary post, written notice of tax delinquencies or a written notice of the tax sales to Gulf South at the Caillou Road address or to Source Bidco, or to any of the other lien-holders of record.[1] Instead, he mailed notices of the tax sales to Gulf South in care of Source Bidco at the Baton Rouge address for Source Bidco.
A stockholder for Gulf South, J. Peyton Parker, Jr., who asserted he was familiar with Gulf South’s business affairs, attested by affidavit that Gulf South never received any notices of either the tax delinquencies or the tax sales. Mr. Parker stated that Gulf South never maintained an office at the East Airport address, nor did Gulf South ever list the East Airport address as its mailing or business address. He further stated that Gulf South was initially incorporated in Baton Rouge, but it had changed its address to Dulac in April 2000. Although Gulf South had obtained a loan from First Louisiana Bidco, Mr. Parker attested Gulf South had never done business at the office or address of Source Bidco, nor had it ever appointed Source Bidco or its agent as an agent for service of process. Mr. Parker attested that Gulf South’s agent for service of process at the time of the |atax sales affecting the subject properties was Mr. Marsala at the Caillou Road address registered with the Louisiana Secretary of State.
On June 25, 2003, Jerri G. Smitko purchased a 100% interest in the properties at the tax sale. The tax deeds at issue were recorded in the mortgage and conveyance records of Terrebonne Parish on July 7, 2003. Gulf South did not redeem the subject properties during the three-year redemption period following recordation of the tax sale. See La. Const, art. VII, § 25(B).
On November 16, 2006, Ms. Smitko filed a petition to quiet tax title pursuant to *753 former La. R.S. 47:2228[2] and La. Const, art. VII, § 25(C).[3] See La. Const, art. VII, § 25(D) (“The manner of notice and form of proceeding to quiet tax titles shall be provided by law.”). Ms. Smitko’s petition named Gulf South as defendant and requested that a curator ad hoc be appointed to represent Gulf South or its assigns, on the basis of Ms. Smitko’s claim that the last known registered | ¿agent of Gulf South, Vincenzo Marsala, could not be located. See La. R.S. 47:2228 (repealed). Ms. Smitko prayed that, if no proceeding to annul the tax sale were instituted within six months from the date of service of the petition and citation to quiet tax title, judgment be rendered in her favor, quieting and confirming her title in the property. See Id.
On December 11, 2006, the curator ad hoc appointed to represent Gulf South’s interests accepted service of Ms. Smitko’s petition. On December 18, 2006, Gulf South, through its own retained counsel, filed an answer to the petition that generally denied the allegations of the petition. Additionally, Gulf South specifically alleged that “no notice was ever sent nor received of tax delinquency.” Gulf South’s answer prayed for the dismissal of Ms. Smitko’s petition to quiet title.
On July 10, 2007, Source Bidco, the holder of a recorded mortgage and security interest in the subject properties, filed a petition of intervention asserting the Sheriff failed to properly notify the record property owner, as well as the record mortgagee and other lienholders, of the tax delinquencies and the tax sales, as required by the due process clause, and, therefore, the tax sales were null and void and should be annulled. By order dated August 17, 2007, Ms. Smitko’s successor, Dulac Dat, L.L.C. (hereafter, “Dulac Dat”), was awarded possession of the subject properties. Thereafter, Dulac Dat filed an opposition to Source Bidco’s intervention.
On April 24, 2008, Gulf South filed a supplemental and amending answer, a re-conventional demand against Dulac Dat, and a third party demand against Jerry J. Larpenter, in his capacity as the sheriff/ex officio tax collector for Terrebonne Parish. In its filing, Gulf South alleged the tax sales were an absolute nullity on the basis *754 that it did not receive any notices from the Sheriff of either the tax delinquencies or the tax sales of its property. Gulf South further alleged the only notices sent by the Sheriffs office regarding non-payment of the 2002 taxes were | ^notices purportedly sent to Gulf South in care of Source Bidco at the East Airport Avenue address in Baton Rouge, which address was never the mailing address of Gulf South. Gulf South also asserted there were other record judicial lienholders, including Coastal Commerce Bank and the Internal Revenue Service, who were similarly not provided with written notice of the tax delinquencies or the tax sales, as admitted by the Sheriff. Gulf South asserted such lack of notice violates procedural due process rights. Gulf South further claimed that its action to nullify the tax sales was timely filed “on or about December 18, 2006 when the original answer was filed.” Gulf South prayed for a judgment annulling the tax sale as to each tract of the subject property and the return of Gulf South’s ownership.
Dulac Dat responded to Gulf South’s reconventional demand by filing another pleading captioned, “Exceptions.” Therein, Dulac Dat asserted that Gulf South’s citation was insufficient, the action was barred by prescription, Gulf South had no cause or right of action to proceed, and Gulf South had used improper cumulation of actions.
On July 25, 2008, Gulf South filed a motion for summary judgment, maintaining there were no genuine issues of material fact that the tax sales of Gulf South’s property were nullities based on due process violations. In support of the motion, Gulf South filed inter alia the Sheriffs responses to its request for admission of facts and the affidavit of Mr. Parker. In November 2008, the trial court denied Gulf South’s motion for summary judgment on the grounds that Gulf South did not timely institute a separate proceeding, either by petition or reconventional demand, to annul the tax sales within six months from the date it was served with the petition as required by former La. R.S. 47:2228. The court thereafter invited the plaintiff to file its own motion for summary judgment.
In March 2009, Dulac Dat filed a motion for summary judgment, seeking an order quieting the titles to the property, urging that Gulf South had failed to timely | (¡institute the appropriate proceeding to annul the tax sales. Dulac Dat maintainéd that Gulf South’s original answer did not constitute a reconventional demand that attacked the validity of the tax sales and that Gulf South’s amended answer with its reconventional demand was filed well after the statutory six-month limitation for attacking the sales due to nullity. Both Gulf South and Source Bidco opposed Dulac Dat’s motion on the basis that the Sheriff had not provided proper notice of the tax sales to either Gulf South or the record mortgagee and lienholders. In May 2009, the trial court granted Dulac Dat’s motion for summary judgment, therein quieting the tax titles and declaring Dulac Dat the sole and only owner of the subject properties, free from any encumbrances. In granting the motion, the trial court referenced its prior finding that Gulf South’s reconventional demand seeking to annul the tax sales was barred because it was filed more than six months after Gulf South was served with the petition and citation to quiet title.
On appeal, a majority of a five-judge panel, after reviewing the case de novo, affirmed the trial court’s grant of summary judgment. Smitko v. Gulf South Shrimp, Inc., 10-0531 (La.App. 1 Cir. 10/19/11), 77 So.3d 1012. The majority first found that Gulf South should have filed a separate action or reconventional demand within six months of the service of the notice of the tax sale and that Gulf *755 South failed to do so because the assertion of the affirmative defense of nullity of the tax sale in its timely filed answer was not sufficient under former La. R.S. 47:2228 or La. Const, art. VII, § 25, to institute proceedings to annul the tax sale. The majority further found that Gulf South’s recon-ventional demand filed outside the six-month time limitation for instituting a proceeding to annul the tax sales did not relate back to the filing of the answer under La. C.C.P. art. 1158. Thus, the majority found that Gulf South was barred from attempting to annul the tax sales based on a violation of due process, either in its answer to the petition to quiet title or in its reconventional demand filed over six months after service of the petition |7to quiet title. The majority opinion went on to find that, even if the property owner and mortgagee had sufficiently and timely instituted a proceeding to annul the tax sales, the property owner and the mortgagee failed to rebut the presumption of regularity owed to the recorded tax sales by showing the lack of notice of the tax delinquencies or the tax sales to the record property owner, as well as the record mortgagee and lienholders.[4]
We granted the writ application filed by Gulf South and Source Bidco to determine the correctness of the lower courts’ rulings regarding Dulac Dat’s motion for summary judgment. Smitko v. Gulf South Shrimp, Inc., 11-2566 (La.2/17/12), 82 So.3d 273.
APPLICABLE LAW
This tax sale case comes to us on a grant of a motion for summary judgment filed by the tax purchaser; thus, the primary legal issue is whether the lower courts correctly found that summary judgment in favor of the tax purchaser was warranted. Appellate review of the granting of a motion for summary judgment is de novo, using the identical criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Bonin v. Westport Ins. Corp., 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910; Schroeder v. Bd. of Supervisors of La. State Univ., 591 So.2d 342, 345 (La.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Duncan v. USAA Ins. Co., 06-0363, p. 4 (La.11/29/06), 950 So.2d 544, 546-547. A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. | ¡¡Hines v. Garrett, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765 {per curiam Xciting Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751). A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Hines, 876 So.2d at 765-66.
Because the trial court granted summary judgment in favor of the tax purchaser, over the objection and claim by the former property owner and the record mortgagee that the tax sales were null and void because they were conducted without affording due process of law to the record property owner and mortgagee, the law governing tax sales underlies our review of the grant of summary judgment. It is well-settled that, under the Fourteenth Amendment to the United States Constitution and La. Const, art. I, § 2, deprivation *756 of property by adjudication must be preceded by notice and opportunity to be heard appropriate to the nature of the case. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656-57, 94 L.Ed. 865 (1950); Tietjen v. City of Shreveport, 09-2116, pp. 4-5 (La.5/11/10), 36 So.3d 192, 194-95. In Mullane, the Supreme Court established that “[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.” 339 U.S. at 314, 70 S.Ct. at 657; see also C & C Energy, L.L.C v. v. Cody Investments, L.L.C., 09-2160, pp. 6-7 (La.7/6/10), 41 So.3d 1134, 1138; Tietjen, 09-2116, p. 5, 36 So.3d at 195; Hamilton v. Royal Int’l Petroleum Corp., 05-846, p. 9 (La.2/22/06), 934 So.2d 25, 32.
In Mennonite Bd. of Missions v. Adams, the Supreme Court recognized that the sale of property for nonpayment of taxes is an action affecting a property right |3protected by the Due Process Clause of the Fourteenth Amendment. 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983). In Mennonite, the mortgagee of a property contested a tax sale that occurred after the homeowner had failed to pay her property taxes. 462 U.S. at 794, 103 S.Ct. at 2709. The mortgagee was not provided notice of the homeowner/mortgagor’s delinquent payment of the taxes or the subsequent tax sale. Id. The Supreme Court held that “a mortgagee possesses a substantial property interest that is significantly affected by a tax sale” and therefore “is entitled to notice reasonably calculated to apprise him of a pending tax sale.” Id. at 798, 103 S.Ct. at 2711. The Supreme Court stated: “Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.” Id. at 800, 103 5.Ct. at 2712. Because the mortgagee was not afforded its constitutional right to . due process, the Supreme Court reversed the decision that upheld the tax sale. Id.
Article VII, Section 25(A) of the Louisiana Constitution of 1974 requires the tax collector to provide notice of the tax delinquency and the tax sale to all owners of record of any interest in the property.[5] Lewis v. Succession of Johnson, 05-1192 (La.4/4/06), 925 So.2d 1172; C & C Energy, 09-2160, p. 7, 41 So.3d at 1139. In former La.Rev.Stat. 47:2180, which was in effect at the time of the tax sale in this case, the legislature set forth the manner by which notice of delinquencies in immovable property taxes must be provided in compliance with La. Const, art. VII, |in§ 25. C & C Energy, 09-2160, pp. 6-7, 41 So.3d at 1139. La.itev.Stat. 47:2180 provided in pertinent part:[6]
*757 § 2180. Immovable property, notice of delinquency
A. On the second day of January each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes, which have been assessed to him on immovable property, or to the record owner of the property for which the taxes are delinquent, or to the actual owner in the event the record owner is deceased, written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing of the notice, or that the property will be sold according to law.
B. The tax collector shall send to each taxpayer by certified mail, with return receipt requested the notice prescribed herein, provided that in cities containing a population of over fifty thousand persons, the tax collector may either send this notice by certified mail or may make personal or domiciliary service on the taxpayer. In the event the certified notice is returned as being undeliverable by the post office, the tax collector may comply with Article 7 Section 25 of the Constitution of Louisiana and the provisions of this Section by advertising the tax debtor’s property in the advertising required for unknown owners in Subsection C of this Section. After the tax collector shall have completed the service by the notices herein required, either by mail or by personal or domiciliary service, he shall make out a proces verbal stating therein the names of delinquents so notified, their post office addresses, a brief description of the property, the amount of taxes due and how the service of notice, was made. [Emphasis added].
Thus under Louisiana law, “in order to give property owners reasonable notice so as not to deprive them of constitutionally protected property rights, the tax collector is required to provide ‘each taxpayer’ with written notice, sent by certified mail return receipt requested, alerting each record owner of the immovable property that the owner’s failure to pay the taxes within twenty days will result in the sale of the property.” C & C Energy, 09-2160, p. 7, 41 So.3d at 1139 (quoting Lewis, 05-1192, p. 8, 925 So.2d at 1177). In Lewis, we emphasized Inthe principle that “notice is a constitutional requirement, and want of notice is fatal to a tax sale.” Lewis, 05-1192, pp. 8-9, 925 So.2d at 1177 (citing Adsit v. Park, 144 La. 934, 81 So. 430 (1919)); C & C Energy, 09-2160, pp. 6-7, 41 So.3d at 1139.
Here, Dulac Dat is seeking to quiet title as provided by law. When a tax purchaser sues to quiet a tax title, she puts that title at issue, and the former owner may avail himself of any defense sufficient to defeat the tax title. Cressionnie v. Intrepid, Inc., 03-1714, p. 4 (La.App. 1 Cir. 5/14/04), 879 So.2d 736, 739 (citing Scheen v. Hain, 141 La. 606, 611, 75 So. 427, 428 (1915)).[7] A tax deed by a tax collector shall be prima facie evidence that a valid sale was made. La. Const, art. VII, § 25(A). Therefore, the former property owner must then carry the burden of proving any defects in the tax adjudication *758 proceedings. Cressionnie, p. 4, 879 So.2d at 739 (citing Crain v. C.W. Vanderdoes Estate, 307 So.2d 157, 158 (La.App. 1st Cir.1974)). If the former property owner “offers evidence sufficient to rebut the presumption of regularity, it then becomes the duty of the tax purchaser to go forward and prove that all requisites for a valid tax sale were complied with.” Cressionnie, p. 4, 879 So.2d at 739 (citing Miller v. Cormier, 16 So.2d 82, 85 (La.App. 1st Cir.1943)).
DISCUSSION
In the instant case, the record before us contains no evidence that the record property owner was ever provided written or printed notice by the Sheriff of either the 2002 tax delinquencies or the 2003 tax sales involving the three subject tracts as required by the law then in effect. Indeed, the Sheriff admitted he did not send 112any written or printed notices, whether by certified mail or ordinary mail, much less make personal or domiciliary service of the notices, to the taxpayer at the address of its agent for service of process, which was readily ascertainable. Thus, it appears from the record that the due process rights of the former property owner were violated.[8]
The arguments of the parties do not persuade us otherwise. Although Dulac Dat argued the property was abandoned, implying that mailing the notices to that address would have been pointless, both Gulf South and Source Bidco argued the property was a shrimp processing plant, presumably in operation only seasonally, but certainly not abandoned. However, there is no sworn testimony or evidence from either party to support those contentions. ■ Dulac Dat did introduce evidence consisting of prior delinquency notices for tax year 2001 addressed to Gulf South at 7332 Caillou Road, which were allegedly found on a desk in the processing plant on Caillou Road, though no sworn testimony has been introduced to verify how or where they were obtained. Although Du-lac Dat essentially argued the presence of the prior notices demonstrated the property was abandoned, such that there was no need to send tax delinquency notices for 2002 to 7332 Caillou Road, the indication that these prior notices were retrieved by someone in early 2002 and placed inside the plant office equally suggests the 2002 notices might well have been received by Gulf South at the Caillou Road address had the Sheriff mailed them to that address. Source Bidco did concede that the 2001 taxes were not timely paid, that the property was sold at a 2002 tax sale, and that the property was later redeemed; however, these admissions do not necessarily result in a factual | ^ finding that the property was abandoned such that written notice of the 2002 tax delinquencies need not have been mailed to the 7332 Caillou Road address.
Nevertheless, the record before us in this motion for summary judgment establishes the Sheriff did not even attempt to mail, whether by ordinary post or certified with return receipt requested, or to serve the notices of the tax delinquencies or the tax sales at Gulf South’s Caillou Road address. Instead, the Sheriff mailed the notices to a Baton Rouge address never previously used by Gulf Southland thereafter resorted to publication of the tax sale as provided by the constitution. As a result, the present record establishes rather convincingly that there remain genuine issues *759 of material fact as to whether the Sheriff provided written or printed notice to the property owner in compliance with former La. R.S. 47:2180, our own constitution, and the due process clause of the Fourteenth Amendment to the federal constitution. Accordingly, the former property owner has raised a credible claim, which the tax purchaser has not overcome on this record, that it was denied due process of law, thereby rendering the tax sales of June 25, 2003, null and void in their entirety. See Lewis, 05-1192, pp. 8-9, 925 So.2d at 1177.
An absolute nullity is “an act in a cause which the opposite party may treat as though it had not taken place, or which has absolutely no legal force or effect.” Bordelon v. Medical Center of Baton Rouge, 03-0202, p. 6 n. 4 (La.10/21/03), 871 So.2d 1075, 1080 n. 4. Dulac Dat argues, and the court of appeal agreed, that Gulf South was required to file a separate petition to annul, complete with service and citation, or a reeonventional demand, to institute proceedings to annul the tax sales within the six months from the service of the petition and citation to quiet title. Smitko, 10-1531, pp. 11-12, 77 So.3d 1012 (citing Regina Lumber Co. v. Perkins, 175 La. 15, 17, 142 So. 785, 786 (1932), and Fellman v. Kay, 147 La. 953, 963, 86 So. 406, 409-10 (1920)). The court of appeal majority found that Gulf South’s answer, asserting 114lack of notice and that the tax sales were null and void, was insufficient to “institute proceedings to annul the tax sale[s]” as required by La. R.S. 47:2228 to prevent judgment in favor of the tax purchaser. Gulf South and Source Bidco, however, argue to this court that the tax sales were absolute nullities, which may be attacked at any time, citing Jamie Land Co., Inc. v. Touchstone, 06-2057, p. 4 (La.App. 1 Cir. 6/8/07), 965 So.2d 873, 875; Cressionnie, 03-1714 p. 6, 879 So.2d at 740; and Sutter v. Dane Investments, 07-1268 (La.App. 4 Cir. 6/4/08), 985 So.2d 1263.
We do not find the time limitation in La. R.S. 47:2228 precluded Gulf South from seeking to annul tax sales that may have already been fatally defective for want of due process. The cases relied on by Dulac Dat and the court of appeal were decided well before the Supreme Court in 1983 issued its opinion in Mennonite, which elevated the lack of notice in a tax sale to a due process violation rendering the tax sale null and of no effect. See Future Trends, L.L.C. v. Armit, 04-525 pp. 5-6 (La.App. 5 Cir. 11/16/04), 890 So.2d 13, 16, writ denied, 04-3082 (La.2/18/05), 896 So.2d 40. Since Mennonite, our court and the courts of this state have repeatedly held that the failure to give notice to a record property owner is a violation of the due process owed to the property owner and that the resulting tax sale is null and void in its entirety. Consequently, we find the failure of the Sheriff to provide notice of the tax delinquencies and tax sales to Gulf South, if proven by Gulf South, was a violation of due process that would preclude confirmation of the tax sales in favor of Dulac Dat. Accordingly, because the tax sales of June 25, 2003, were apparently of no legal force or effect, Gulf South’s April 24, 2008 reeonventional demand to annul the tax sales for lack of due process was timely before the trial court.
| ^CONCLUSION
For these reasons, we find the former property owner’s claim that the tax sales were null and void was timely asserted. We further find the former property owner has sufficiently established the Sheriff failed to provide notice of the tax delinquencies and the tax sales to the former property owner as required by due process of law such that summary judgment in favor of the tax purchaser to quiet the tax titles was not supported by the record. Accordingly, the trial court’s ruling granting summary judgment and quieting title *760 is reversed, and the matter is remanded to that court for further proceedings.
REVERSED AND REMANDED.

. In his response to Gulf South's request for admissions of fact, the Sheriff admitted the only notices relating to the subject properties that he sent regarding either tax delinquencies or scheduled tax sales were sent to the East Airport Avenue address in Baton Rouge, Louisiana, care of Source Bidco. Further, the Sheriff admitted he did not send any written notice regarding property taxes owed, the delinquencies, or scheduled tax sales to any mortgage or judicial lien holder, including Source Bidco and Coastal Commerce Bank, except that Coastal Commerce Bank was advised by telephone on June 17, 2003, of the upcoming tax sale.

. Former La. R.S. 47:2228 stated in pertinent part:
After the lapse of three years from the date of recording the tax deed in the conveyance records of the parish where such property is situated, the purchaser, his heirs or assigns, may institute suit by petition and citation as in ordinary actions against the former proprietor or proprietors of the property, in which petition must appear a description of the property, mention of the time and place of the sale and name of officer who made same, reference to page of record book and date of recording tax deed, notice that petitioner is owner of the said property by virtue of said tax sale, and notice that the title will be confirmed unless a proceeding to annul is instituted within six months from date of service of the petition and citation.... After the lapse of six months from the date of service of petition and citation, if no proceeding to annul the sale has been instituted, judgment shall be rendered quieting and confirming the title. 2008 La. Acts, No. 819, § 2, effective January 1, 2009, repealed La. R.S. 47:2221 to 2230. Section 1 of Act No. 819 enacted La. R.S. 47:2266, effective January 1, 2009, which reproduces the substance of and combines former La. R.S. 47:2228 and 47:2228.1. See La. R.S. 47:2266, Comment — 2008.

. La. Const, art. VII, § 25(C), entitled "Annulment,” provides in pertinent part:
No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given.

. It is not clear from the individual opinions of the concurring and dissenting judges on the appellate court panel that a majority of that panel fully subscribed to the majority opinion's discussion of the lack of notice issue.

. Article VII, § 25(A), entitled "Tax Sales,” provides in pertinent part:
(1) There shall be no forfeiture of property for nonpayment of taxes. However, at the expiration of the year in which the taxes are due, the collector, without suit, and after giving notice to the delinquent in the manner provided by law, shall advertise for sale the property on which the taxes are due. The advertisement shall be published in the official journal of the parish or municipality, or, if there is no official journal, as provided by law for sheriffs' sales, in the manner provided for judicial sales.... (Emphasis added).

. La. R.S. 47:2180 was repealed by 2008 La. Acts, No. 819, § 2, effective January 1, 2009. Section 1 of Act No. 819 enacted current La. R.S. 47:2153(A) and (B), which generally reproduce the substance of the former statute with certain modifications. See La. R.S. 47:2153, Comments-2008(a).

. In Scheen v. Hain, this court acknowledged the law as follows:
Where a tax purchaser sues for possession or to confirm or quiet his title[,] he of course puts that title in issue, and the original owner may avail himself, by way of defense, of any matters sufficient to overthrow the tax title, such as the non-liability of the land to taxation, the previous payment of the taxes, jurisdictional defects in the proceedings, or fatal irregularities in the tax sale.
141 La. at 611, 75 So. at 428 (quoting William Mack, Cyclopedia of Law and Procedure, v. 37, p. 1488 (1911), and collecting cases).

. Additionally, as the Sheriff admitted, neither Source Bidco, the record mortgagee, nor the other record lienholders were provided with written or printed notice of the tax delinquencies or tax sales, which they were enti-tied to under the due process clause. See Mennonite (in that case, the mortgagee of record subsequently invalidated the tax sale because it was not provided notice of the tax delinquency or sale); see also Tietjen, supra.