**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**17-453**

**DONNA KEEVEN**

**VERSUS**

**WEN-STAR, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20144318
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Van H. Kyzar, Judges.

**REVERSED AND REMANDED.**

Michael W. Robinson
Pucheu, Pucheu & Robinson LLP
P. O. Box 1109
Eunice, LA 70535-1109
(337) 457-9075
COUNSEL FOR PLAINTIFF/APPELLANT:
    Donna Keeven

Eric D. Burt
Sidney W. Degan, III
Degan, Blanchard & Nash
5555 Hilton Avenue, Suite 620
Baton Rouge, LA 70808
(225) 610-1110
COUNSEL FOR DEFENDANTS/APPELLEES:
    Wen-Star, Inc.
    Wen-Star of Louisiana, Inc. d/b/a Wendy's
    Amtrust North America, Inc.

**KYZAR, Judge.**

In this slip and fall liability case, the plaintiff, Donna Keeven, appeals the judgment of the trial court granting summary judgment in favor of the defendants, Wen-Star, Inc., Wen-Star Louisiana, Inc., d/b/a as Wendy's, and Amtrust North America, Inc. For the following reasons, we reverse and remand.

## DISCUSSION OF THE RECORD

On August 26, 2013, Ms. Keeven entered a Wendy's fast-food restaurant, located on Ambassador Caffery, in Lafayette, Louisiana. After entering, she turned to the right and walked down the hall in the direction of the ladies' restroom. However, before she reached door, her feet slipped out from underneath her, causing her to fall to the floor. On August 22, 2014, Ms. Keeven filed a petition for damages against Wendy's Wen-Star, Inc., Wen-Star Louisiana, Inc., d/b/a as Wendy's, and Amtrust North America, Inc., as insurer (collectively referred to as "Wendy's"), seeking damages for injuries she suffered as a result of this incident. In her petition, she alleged that she slipped and fell due to "water and/or other liquid(s) on the floor, which she was later informed was condensation from the air conditioning unit, of which condition the employees and/or management were aware or should have been aware."

After answering Ms. Keeven's petition, Wendy's filed a motion for summary judgment, asserting that no genuine issue of material fact existed and that Ms. Keeven could not meet her burden of proving that Wendy's created or had actual or constructive notice of the allegedly unreasonably dangerous condition as required under La.R.S. 9:2800.6. Ms. Keeven opposed the motion. Following a February 6, 2017 hearing on the motion, the trial court granted summary judgment in favor of Wendy's and dismissed Ms. Keeven's claims with prejudice. A written

judgment was rendered by the trial court on February 23, 2017. It is from this judgment that Ms. Keeven appeals.

On appeal, Ms. Keeven raises three assignments of error for our review:

1. The trial court erred in granting the Motion for Summary Judgment, dismissing all claims of the Plaintiff-Appellant.

2. The trial court erred in concluding that there was insufficient evidence which created an issue of fact, which should have been determined by the trier of fact, taking into account the credibility of Ms. Keeven, Amanda Bob, persons working for Wendy's and whether there was spot mopping meant to remove the extra slippery substance on the floor prior to Ms. Keeven exiting the restroom, and whether the manager did acknowledge in an admission against interest to Ms. Keeven that the air conditioner had been leaking.

3. The [trial] court erred in imposing the same burden on Ms. Keeven as those persons who cannot identify the substance on the floor, when the issue in this case was not whether a substance on the floor was left by a customer, but was a substance believed to have originated from actions and/or inactions of the defendant store owner *(In other words, the trial [court] erred by analyzing the Motion for Summary Judgment as if Ms. Keeven slipped on a foreign substance left by a customer, in requiring her to identify precisely such substance, and provide evidence showing that there had been inadequate inspections and/or inadequate cleanups of such items left by another customer.)*

**OPINION**

Louisiana Code of Civil Procedure Article 966 provides that summary judgment procedure is favored and that it "is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La.Code Civ.P. art. 966(A)(2). It further provides that summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). Although the burden of proof rests with the mover, if the mover will not bear the burden of proof at trial then he need only point out to the trial court "the absence of factual support for one

2

or more elements essential to the adverse party's claim, action, or defense." La.Civ.Code art. 966(D)(1). Once this occurs, the burden shifts to "the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

In *Smitko v. Gulf South Shrimp, Inc.*, 11-2566, pp. 7-8 (La. 7/2/12), 94 So.3d 750, 755, the supreme court set forth the governing law relative summary judgment and our appellate standard of review thereof, as follows:

> Appellate review of the granting of a motion for summary judgment is *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Bonin v. Westport Ins. Corp.*, 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910; *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342, 345 (La.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; *Duncan v. USAA Ins. Co.*, 06-0363, p. 4 (La.11/29/06), 950 So.2d 544, 546-547. A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Hines v. Garrett*, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765 (*per curiam*)(citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751). A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Hines*, 876 So.2d at 765-66.

In *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765 (per curiam) (alteration in original), the supreme court stated:

> We review a district court's grant of summary judgment *de novo*, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Summary judgment is warranted only if "there is no genuine issue as to material fact and [ ] the mover is entitled to judgment as a matter of law." La.Code Civ. Proc. art. 966(C)(1). In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor.

3

To succeed in a negligence claim against a merchant, La.R.S. 9:2800.6(B) requires that a plaintiff prove that:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice[1] of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

Wendy's introduced Ms. Keeven's petition and her deposition testimony in support of its motion for summary judgment. In her deposition, Ms. Keeven testified that after entering Wendy's, she turned to the right and was walking down a hall to the ladies' restroom. She stated that she lost her balance when she was in front of the door and fell due to a slippery substance on the floor. Ms. Keeven testified that she yelled as she fell onto her right side. She stated that she sat on the floor for a few minutes and then she got onto her hands and knees and pulled herself up until she was standing. Once she was standing, she stated that she walked into the restroom, feeling disoriented. She said that Ms. Bob came in and checked on her and asked to speak with her after she exited the restroom.

Ms. Keeven testified that when she exited the restroom, she saw a male employee with a mop, a bucket, and a wet floor sign standing in the general area of her fall. As she exited the restroom, she stated that she walked slowly, more aware of the condition of the floor, and that her tennis shoes made a squeaking sound, as though either moisture or a sticky substance was on the floor. When she sat down at a table with Ms. Bob, Ms. Keeven testified that she asked her if there was a

---

[1] "Constructive notice" requires the plaintiff to prove that "the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La.R.S. 9:2800.6(C)(1).

4

solution on the floor. She said that Ms. Bob then volunteered that Wendy's had experienced trouble with the air conditioner, which may have caused moisture to drip on the floor.

Ms. Keenen testified that there was sufficient light in the hallway, although the area was not as bright as the dining room. She stated she was looking at the door of the restroom when she was walking down the hall and that she did not see any water on the floor or a warning cone. Ms. Keeven said that she did not notice anyone mopping when she arrived at the restaurant and that it was only after she exited the restroom that she saw the male employee mopping in the area of her fall. She further stated that she neither knew what substance caused her to fall nor how long it had been on the floor of the restaurant. She said that her clothes did not get wet as a result of her fall.

In opposition to Wendy's motion for summary judgment, Ms. Keeven, in addition to her deposition testimony, introduced her affidavit; Ms. Bob's deposition testimony and handwritten statement; the accident report completed by Ms. Bob; a handwritten statement by Wendy's employee, Ikara Brown; and the interrogatories propounded to Wendy's on October 29, 2015.[2]

Ms. Keeven's affidavit mirrored her deposition testimony. She stated that the accident occurred "when both of her feet suddenly and violently, and without any warning, went out from underneath her, such that causing her to land with great force on the floor." She stated that she slipped on something that was extremely slippery, which she said could not have been water, and that after she exited the restroom, someone was spot mopping in the general vicinity of her fall. She said that this person had finished mopping by the time she finished speaking to

---

[2] Although the interrogatories and requests for the production of documents were submitted in support of Ms. Keeven's opposition, the answers to the interrogatories were not included.

5

Ms. Bob, and did not continue mopping the entire restaurant. Ms. Keeven stated when she asked if the floor had recently been mopped because her shoes squeaked while she was walking, Ms. Bob "volunteered without any prompting that the slippery substance on the floor was probably from the air conditioner unit, which had been leaking in that area[.]"

Ms. Bob testified that Ms. Keeven's accident occurred between 10:00 and 11:00 a.m., while she was outside doing a walk-through of the restaurant's surroundings. She stated that she was notified of Ms. Keeven's accident by Ikara Brown, a Wendy's employee, who was on break. She stated that when she first walked back into the restaurant, she noticed a yellow warning cone at the beginning of the hallway. She stated that the cone, which was waist high and stated "caution, wet floor," had been in place since the floors were mopped between 7:00 and 8:00 a.m. Ms. Bob testified that she, as the general manager of the restaurant, was responsible for mopping the floor after she arrived at work at 7:00 a.m.

Ms. Bob testified that Ms. Keeven was in the restroom, so she knocked on the door and asked her if she was okay. She stated that Ms. Keeven, who was standing near the sink, told her that she had slipped and fallen. When she again asked her if she was okay, she stated that Ms. Keeven said that she was okay, but repeated that she had slipped and fallen. She stated that she then exited the restroom and told Ms. Keeven through the door that she was going to get an accident report and asked her to wait for her in the dining room.

Ms. Bob testified that after she stepped back into the hall, she observed that the hall floor was dry and then knelt and touched the tile floor in the hall and at the entrance to the restroom, both of which, she said, felt normal. While retrieving the accident report, she stated that she called her district manager, Bobby Dunning, to

6

report the incident. Once she returned to the dining room, Ms. Bob testified that she set down with Ms. Keeven and filled out the accident report based on what Ms. Keeven told her. She stated that she did not ask and Ms. Keeven did not say what caused her to fall. She said that she wrote on the report that the floor where Ms. Keeven fell was not wet, which was based on her own observation.

Ms. Bob testified that there was nothing about Ms. Keeven's condition to indicate that she had fallen. She stated that Ms. Keeven was wearing slippers at the time of her fall. She said that the restaurant's floor was made of tile, and she denied that a Wendy's employee spot mopped the floor after Ms. Keeven fell. Ms. Bob testified that she wrote her statement and had Ms. Brown write a statement once Ms. Keeven left. She stated that she asked but that no other employees had witnessed the accident. She said that Ms. Brown, who was in the dining room and heard Ms. Keeven yell, indicated that an unidentified departing customer helped Ms. Keeven up, but that the customer had already left.

Ms. Bob testified that she did not recall discussing the air conditioner unit with Ms. Keeven, nor did she recall there being any leakage from the air conditioner unit in the hall. She explained that there are no air vents in the hall. She stated that if the restaurant experiences air conditioning problems, the manager on duty sends out a work order to a Wendy's maintenance technician. Ms. Bob testified that Wendy's has one maintenance technician in Lafayette, who works on all problems. However, she stated that the district manager or the maintenance technician may decide to use an outside vendor if the maintenance technician is unavailable. Although she first stated that Wendy's experienced no air conditioner problems in the summer of 2013, she then qualified that by stating that she could not recall any problems. She further said that she thought she would have

7

remembered if the air conditioner unit leaked and caused the floor to become slippery.

Ms. Bob testified that as the manager, she completes accident reports using the same form for employees and customers. She stated that she fills in the reports based on what the employee/customer reports and based upon observations she makes from her own investigations. She stated that she also obtains statements from eye-witnesses. Ms. Bob testified that there were no surveillance cameras in the hall where Ms. Keeven fell, and she did not know if there were surveillance cameras in the entrance areas. If there were, she stated that the monitors would be located at the district office. She further admitted that she did not take photographs of the area where Ms. Keeven fell. She said that she only takes photographs of an accident site if told to do so by her district manager. In this instance, she said that she did not consult with her district manager about the need for photographs. Ms. Bob testified that there were no other falls by customers in the summer of 2013.

The August 26, 2013 accident report, prepared by Ms. Bob, describes Ms. Keeven's injury as "Slip down on way to restroom. She said she twisted her back & hurt her knee." The description of the incident states:

> Customer come in the restaurant to use restroom, and on her way there, she slip down. She said she twisted her back and hurt her knee. Customer stated she climbed back up on her knees. Floor was not wet.

In her August 26, 2013 statement, Ms. Bob stated that after she was notified of Ms. Keeven's fall, she entered the restaurant to check on her. She stated:

> When the customer exited the restroom I asked if she was ok, and if she needed help. She said no, but do an accident report, which I would do anyway. Upon doing the report, customer stated she hurt her back, and her knee. I looked at the area, there was no water on the floor, and a wet floor sign was visible @ the front door entrance. The floor was mopped @ 7:30 AM, and wet floor signs were just left out until after lunch. Customer left, and came back in . . . . Also during our conversation, the customer told me that this is like a car accident,

8

you don't feel the pain until a few days later. I looked at her knees, and there was no redness or bruising. She said she slid on her hands, but still didn't see any redness or bruising.

In her August 26, 2013 statement, Ms. Brown stated in part:

I was on break and saw the customer walk in the store. She was on the way to the bathroom and I heard her holler. When I looked up the customer was on the floor. I went to assist her, but another customer helped her up then she left. At that time I looked at the floor to see how or why she fell and she went into the bathroom. The floor wasn't wet and she should have saw the yellow wet floor sign that had been there since 7:30 this morning.

In granting judgment in favor of Wendy's, the trial court stated the following during its oral ruling at the hearing on the motion for summary judgment:

I guess my question is, the dispute in facts, if, in fact, the plaintiff can show that they mopped the area, was mopping the area after she comes out of the bathroom, she sits down, and then the dispute is whether the manager says, yes, we had an air conditioner problem, and the plaintiff says she told me she did.

But I guess my concern is just having a conversation with the manager is not enough, [counsel]. But if you can show that there was mopping and/or there was [an] air conditioner problem, then I think it's a different issue. But if you can't, a he said/she said isn't enough in a slip and fall.

After finding that Ms. Keeven had no evidence, other than her own testimony, to show that a Wendy's employee mopped the area of her fall, the trial court granted summary judgment in favor of Wendy's.

In deciding in Wendy's favor, we find that the trial court, rather than finding that no genuine issue of material existed, evaluated the evidence and placed a heightened burden of proof on Ms. Keeven, that of whether she would be successful at trial. However, viewing all reasonable inferences in a light most favorable to Ms. Keeven, a finder of fact could, based on her testimony that she slipped and fell, that the manager told her that there had been an air conditioner leak in that area, and that a Wendy's employee mopped the area immediately after her fall, find that genuine issues of material fact do exist. This is clear based on the

9

trial court's own admission that there was a dispute in the facts and its statement that this was a "he said/she said" issue. Thus, resolving all doubt in favor of Ms. Keenen, we find that the granting of the motion for summary judgement was not warranted. Accordingly, we reverse the judgment of the trial court in favor of Wendy's and remand the matter for further proceedings.

## DISPOSITION

For the foregoing reasons, the judgment of the trial court in favor Wen-Star, Inc., Wen-Star Louisiana, Inc., d/b/a as Wendy's, and Amtrust North America, Inc. is reversed, and the matter is remanded for further proceedings. The costs of this appeal are assessed to Wen-Star, Inc., Wen-Star Louisiana, Inc., d/b/a as Wendy's, and Amtrust North America, Inc.

**REVERSED AND REMANDED.**

10