PAUL A. BONIN, Judge.
It Rex Darling Jr. failed to pay the 2008 ad valorem taxes due on immovable property owned by him. Heather Surcouf acquired the property at a tax sale and confirmed a default judgment against Mr. Darling by which judgment she sought to quiet title to the property. Some months later, however, Mr. Darling filed suit against Ms. Surcouf to annul the tax sale transfer.
*1088 Mr. Darling’s primary ground for his nullity action was that the tax collector for the City of New Orleans, having been notified that notice of the tax sale had not been delivered to' Mr. Darling, failed to take additional reasonable steps to provide him notice before proceeding to the tax sale. Ms. Surcouf responded that the tax collector had taken such steps, primarily by virtue of hiring a privately contracted company, which, according to her, made several endeavors to locate all interested parties.
Mr. Darling filed a motion for partial summary judgment, seeking to have the tax sale adjudged an absolute nullity. Ms. Surcouf, arguing that there remained genuine issues of material fact about any additional steps taken by the tax collector | ato notify Mr. Darling of the tax sale, opposed the motion. The trial judge granted partial summary judgment, decreeing the tax sale a nullity, and also, under La. C.C.P. art. 1915 B(l), designated the judgment as final and appealable. Ms. Surcouf now appeals.
On our de novo review of the partial summary judgment, we conclude that the trial judge was legally correct in finding that there was no genuine issue of material fact that the tax collector had failed to take additional reasonable steps to provide Mr. Darling with notice before the tax sale and, accordingly, the tax sale was an absolute nullity. Accordingly, we affirm the partial summary judgment and remand the matter for further proceedings.
We explain our decision in more detail below.
I
At the outset, we emphasize that the parties and the trial judge correctly and importantly recognized that the judgment here declaring the tax sale a nullity is not a final and appealable judgment in the absence of a proper designation as[1] a final judgment by the trial judge “after an express determination that there is no just reason for delay.” La. C.C.P. art. 1915 B(l). The procedure necessarily follows the substance of the judgment. And substantively, unless the tax sale was annulled because the taxes were paid before the date of the tax sale, “[n]o judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the prices and taxes paid from date of respective payments are paid to the purchaser ...” La. Const, art. VII, la§ 25(C). See also Mooring Tax Asset Grp., L.L.C. v. James, 14-0109, p. 7 (La.12/9/14), 156 So.3d 1143, 1148 (“This constitutional provision specifically dictates that the judgment of nullity cannot be effective until the tax purchaser is reimbursed taxes, costs, and interest.”).
Thus, because the basis of Mr. Darling’s claim that the tax sale was a nullity was not that he had paid the property taxes before the tax sale, the declaration of absolute nullity of a tax sale here is merely the rendition of a partial summary judgment which is dispositive of a particular issue in the case but does not by any means dispose of the entire case as to these parties. See La. C.C.P. art. 966 E. A declaration of absolute nullity of a tax sale does not entitle the delinquent taxpayer to the immediate cancellation of the tax sale deed (or its equivalent). See Mooring Tax Asset Grp., L.L.C., 14-0109, p. 10, 156 So.3d at 1148-50. In order for the nullity to be effected through a cancellation of the tax sale deed, the tax sale purchaser must be restored to the situation that existed before the tax sale. Id. See also La. Civil Code art. 2033 (“An absolutely null contract ... is deemed never to have existed. The parties must be restored to the sitúa *1089 tion that existed before the contract was made.”).
Here, the trial judge satisfied the requirements of La. C.C.P. art. 1915 B(1) by designating the judgment as final, thereby allowing us to exercise our appellate jurisdiction in this matter. See La. Const. art. V, § 10(A); R.J. Messinger, Inc. v. Rosenblum, 04-1664 (La.3/2/05), 894 So.2d 1113. Cf. Favrot v. Favrot, 10-0986, p. 4 (La. App. 4 Cir. 2/9/11), 68 So.3d 1099, 1103; La. C.C.P. art. 1915 B(2) (“In the absence-of such determination and designation, any such order or decision shall not constitute a final judgment for the purpose of an immediate appeal.... ”).
II
Keeping in mind that we are considering the ruling on a partial summary judgment, in this Part we turn to describe only those facts which are contained in the “field of evidence” introduced at the hearing on the motion for partial summary judgment.
A
By affidavit, Mr. Darling stated that he had acquired the property located at 1472 Constance Street in New Orleans on February 16, 2000. A certified copy of that acquisition was attached; the notarial act of sale showed his “mailing address” as 738 Milan Street, New Orleans, Louisiana 70115. A certified copy of a mortgage in favor of American Thrift & Finance Plan LLC d/b/a State Farm Acceptance was also enclosed. The mortgage was recorded in the mortgage office records on November 28, 2001. The mortgagee’s address in the notarial act is shown as 4344 Earhart Blvd., New Orleans, Louisiana 70125.
Mr. Darling further stated under oath that he moved in February 2008 to Marina del Rey in California and supplied his forwarding address, 4101 Via Marina Unit N-307, Marina del Rey, California 90292, to State Farm Acceptance, which maintained the new address in its files and issued his 2009 IRS Mortgage Interest Statement Form 1098 to that address. All of these statements were substantiated by attached documentary evidence.
| ^Another affidavit, this one by attorney Daniel Oppenheim, who was comanager of State Farm Acceptance, was filed by Mr. Darling. Mr. Oppenheim stated that despite the recordation of State Farm Acceptance’s mortgage, the tax collector did not give the mortgagee notice of the tax. delinquency or the impending tax sale. Mr. Oppenheim verified that Mr. Darling had furnished his California address to the mortgage holder and that State Farm Acceptance would have shared the address with the tax collector. Mr. Oppenheim also declared that State Farm Acceptance would likely have advanced the sums necessary to pay any delinquent taxes had notice been given to it. The mortgage instrument itself secured Mr. Darling’s obligation to repay State Farm Acceptance in the event that it .paid taxes on the property-
The affidavits of Walter O’Brien Jr., the City’s finance operations manager in the Bureau of the Treasury, and of Margaret Beyer were introduced. Mr. O’Brien declared that two notices were sent to Mr. Darling before the tax sale. Both notices, mailed to 1472 Constance Street, were returned and notated “Attempted — Not Known — Unable to Forward.” A third pre-tax sale notice was sent by certified mail to the | (¡Constance Street address. It was returned and notated “Vacant — ^-Unable to Forward.” Because the delinquent taxes remained unpaid after twenty days, legal advertisements were, published in The Times-Picayune on November 21, 2009 and November 28, .2009. Ms. Beyer verified these dates from her own re *1090 search. The tax sale occurred December 2-3, 2009. Mr. O’Brien reports that two post-sale notices were sent by first class mail to Mr. Darling at the Constance Street address and both were returned and notated “attempted — not known — unable to forward.”
In opposition to these affidavits, Ms. Surcouf introduced the affidavit of Bryan Barrios. Mr. Barrios is the chief executive officer of Archon Information Systems, which was subcontracted to administer aspects of the City’s tax sales. Mr. Barrios generally describes in his affidavit the kind of services Archon performed in connection with the December 2009 tax sales, which was when this tax sale occurred. He declared that an automated skip tracing was performed to locate addresses of interested parties, a search of bankruptcy records of interested persons were performed, a telephone call notice campaign was conducted to attempt to reach the tax debtor, and public records interested party research was conducted. His affidavit, however, does not specify that any of these general activities were undertaken with respect to Mr. Darling’s property and does not specify the results, if any, related to this particular property and its owner. Mr. Barrios’ affidavit also verifies information provided by Mr. O’Brien about the notices sent to Mr. Darling at the Constance Street address and returned to the tax collector.
B
Based upon these affidavits and the certified documentary evidence, we find that the tax collector was aware before the tax sale that Mr. Darling had not received the notice of the delinquency and impending tax sale at any time before the tax sale. We also find, as undisputed facts, that the tax collector did not give [7notice of the tax sale to State Farm Acceptance, the mortgagee, before the tax sale and that the mortgagee was actually in possession of the then-current address for Mr. Darling. Finally, we conclude from the affidavits that there were no facts before the trial judge as to additional efforts or steps, if any, of the tax collector to give Mr. Darling notice before selling his property at a tax sale.
Keeping these factual findings in mind, we turn to address Ms. Surcouf s specific arguments.
Ill
Ms. Surcouf presents several assignments of error. She first claims that any deficient pre-tax sale notice was cured by service of the Petition to Confirm Tax Title, which sufficiently satisfied Mr. Darling’s due process rights. Ms. Surcouf next claims that Mr. Darling did in fact receive proper pre-tax sale notice because the City, after the mailed notices were returned unclaimed, took reasonable additional steps to locate and provide notice to Mr. Darling. Mr. Darling, however, contends that no reasonable additional steps were taken, and it is on this point that Ms. Surcouf claims a genuine issue of material fact exists.
Ms. Surcouf also raises two additional grounds for why the lower court’s ruling should be reversed. She claims that the tax sale advertisements were properly published in the manner provided by law and that the mortgage holder, State Farm Acceptance, was not entitled to notice pri- or to the tax sale. Ms. Surcouf therefore asserts that any findings to the contrary were improper bases for granting summary judgment.
JsJV
To properly address Ms. Surcoufs first claim, we turn our attention in this Part to the fundamental requirements of giving *1091 notice to a tax debtor before his property-may be taken from him at a tax sale.
Both the Fourteenth Amendment to the United States Constitution and Art. I, § 2 of the Louisiana Constitution guarantee due process of law before the deprivation of life, liberty, or property. It is therefore well-established that prior to instituting an action which will affect an interest in property, a state must provide “notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.” Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
Moreover, due process requires that the state give “[njotice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party ... if its name and address are reasonably ascertainable.” Mennonite Bd. Of Missions v. Adams, 462 U.S. 791, 800, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (emphasis in original). Although a property owner need not receive actual notice before his property is taken, when a mailed notice of a tax sale is returned unclaimed, the state “must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so.” Jones v. Flowers, 547 U.S. 220, 225-26, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006).

Jé

Ms. Surcouf claims that Mr. Darling’s constitutional right of notice was satisfied when he received the Petition to Confirm Tax Title on September 17, 2013, nearly four years after his property was sold at a tax sale. Specifically, Ms. Sur-couf contends that the post-tax sale notice cured any “deficient pre-tax sale notice and satisfied] [Mr. Darling’s] due process rights.” She bases her claim on La. R.S. 47:2157 A(2), which provides that notice sent after the expiration of the redemptive period “shall constitute a notice of sale, and sending of this notice shall constitute the service of the notice of sale under Article VII, Section 25 of the Louisiana Constitution. This notice shall be sufficient without regard to whether the notice of the tax sale or any other notice has been given.” [1] Because Mr. Darling failed to institute an annulment action within six months after receiving the Petition, Ms. Surcouf concludes that he waived his right to annul the sale of his property. See La. R.S. 47:2157 A(1)(b) (“[T]he tax sale purchaser may send a notice to a tax sale party whose interest the tax sale purchas- . er intends to terminate that the party has until ... [s]ix months after the date of the notice if five years have not elapsed from the filing of the tax sale certificate, to challenge, in a court of competent jurisdiction, the tax sale.”).
Ms. Surcouf, however, ignores the long-established jurisprudential rule that requires a state to provide notice prior to an action “which will adversely affect the ... property interests” of a party. Mennonite, 462 U.S. at 800, 103 S.Ct. 2706; see also Jones, 547 U.S. at 226, 126 S.Ct. 1708 (due process requires the government to provide notice to interested parties “before selling [the] property” at a tax sale). The Mennonite Court did not require that a property owner’s interest be completely “terminated” before he is due notice; rath *1092 er, notice is due before any action or proceeding which will “adversely affect” the property. There is no doubt that a tax sale will adversely affect a property and that property owner’s interest. This is evidenced by Louisiana law, which requires that a property owner receive notice before the state may sell the property at a tax sale. See La. Const, art. VII, § 25 A(1) (“the [tax] collector ... after giving notice to the delinquent in the manner provided by law, shall advertise for sale the property on which the taxes are due”) (emphasis added); see also La. R.S. 47:2153 A(1)(a) (prior to a tax sale, “the tax collector shall send a written notice by certified mail” to the tax debtor).
Further, Louisiana courts have consistently recognized that a tax sale adversely affects property interests and have never dispensed with the requirement of notice before such a sale. See e.g., Mooring Tax Asset Group, L.L.C., 14-0109, p. 5, 156 So.3d at 1147 (“The sale of property for nonpayment of taxes is an action that affects a property right protected by the Fourteenth Amendment”); Smitko v. Gulf South Shrimp, Inc., 11-2566, pp. 8-9 (La.7/2/12), 94 So.3d 750, 756 (same); Brookewood Investments Co., L.L.C. v. Sixty-Three Twenty-Four Chef Menteur Highway, L.L.C., 12-1205, p. 6-7 (La.App. 4 Cir. 1/16/13), 108 So.3d 329 (United States and Louisiana Constitutions require the state to provide notice prior to conducting a tax sale of property).
Although the wording of La. R.S. 47:2157 purports to establish that post-tax sale notice to the property owner, without more, is constitutionally sufficient,[2] we find its provisions inapplicable under the facts of this case. If we were to accept Ms. Surcoufs arguments, our decision would conflict with longstanding federal and state precedent. We decline to take such a position. See generally Louisiana Fed’n of Teachers v. State, 13-0120 (La.5/7/13), 118 So.3d 1033, 1055 (“statutes exist within the bounds of the Constitution, not vice versa.”) (internal citation omitted); see also M.J. Farms, Ltd. v. Exxon Mobil Corp., 2007-2371 (La.7/1/08), 998 So.2d 16, 32 (“the constitution is the supreme law of this state, to which all legislative acts must yield”).[3] Therefore, to the extent that Ms. Sureouf claims due process was satisfied by the post-tax sale service of the Petition alone, she is mistaken. Mr. Darling was entitled to sufficient notice before the tax sale and any failure to comply with the Fourteenth Amendment’s due process notice requirement renders the tax sale an absolute nullity. See Smitko, 11-2566, p. 14, 94 So.3d at 759 (“Since Mennonite, our court and the courts of this state have repeatedly held that the failure to give notice to a record property owner is a violation of the due process owed to the property owner and that the resulting tax lósale is null and void in its entirety”); see also Brookewood Investments Co., L.L.C., 12-1205, p. 7, 108 So.3d at 333.[4]
*1093 Thus, we reject Ms. Surcouf s contention that post-tax sale notice can cure constitutionally defective pre-tax sale notice. Consequently, the sole remaining issue is whether the City’s actions prior to commencing the tax sale create a genuine issue of material fact as to whether Mr. Darling received constitutionally-sufficient notice.
V
To make such a determination, in this Part we set forth the applicable law for reviewing a motion for summary judgment. Appellate courts review a judgment granting or denying a motion for summary judgment de novo, under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. See C & C Energy, L.L.C. v. Cody Investments, L.L.C., 09-2160, p. 4 (La.7/6/10), 41 So.3d 1134, 1137; Garrison v. Old Man River Esplanade, L.L.C., 13-0869, p. 3 (La.App. 4 Cir. 12/18/13), 133 So.3d 699, 701. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966 B(2). Summary judgment is |1sfavored in Louisiana and is designed to secure the just, speedy, and inexpensive determination of every action. See La. C.C.P. art. 966 A(2).
The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists. See La. C.C.P. art. 966 C(2); see also Phipps v. Schupp, 14-0672, p. 31 (La.App. 4 Cir. 3/18/15), 163 So.3d 212, 230. If the movant makes a prima facie showing that the motion should be granted, the burden then . shifts to the non-moving party to produce evidence demonstrating that a material factual issue remains; the failure to do so mandates granting of the motion. See id. The non-moving party’s response may not rest on the allegations or denials contained in his pleading, but must set forth, by affidavit or otherwise provided by law, specific facts showing that there is a genuine issue of material fact for trial. See La. C.C.P. art. 967 B; Garrison, 13-0869, p. 3, 133 So.3d at 700-01.
A
Here, Ms. Surcouf claims that summary judgment was improper because the City took reasonable additional steps to provide notice to Mr. Darling after the mailed notices were returned unclaimed. See Jones, 547 U.S. at 225-26, 126 S.Ct. 1708. The City hired Archon Information Systems, a private contractor, for the purpose of identifying and locating all interested parties prior to the tax sale. Ms. Surcouf argues that Archon’s actions to locate Mr. Darling, as detailed in Mr. Barrios’ affidavit, demonstrate a genuine issue of material fact as to whether additional reasonable steps were taken to provide notice.
As noted previously, due process does not require that the property owner receive actual notice before a tax sale. See id.; see also Cititax Group, L.L.C. v. Gibert, 12-0633, p. 4 (La.App. 4 Cir. 12/19/12), 108 So.3d 229, 232. Nevertheless, when the mailed notices sent to Mr. Darling were returned to the City unclaimed, the tax collector had a duty to take reasonable additional steps to provide notice to him. See Jones, 547 U.S. at 225-26, 126 S.Ct. 1708; see also Lewis v. Succession of Johnson, 05-1192, p. 10 *1094 (La.4/4/06), 925 So.2d 1172, 1178 (“The requirement that the tax collector take additional reasonable steps to notify a delinquent taxpayer is a longstanding principle.”).
The affidavit from Mr. Barrios lists the steps that were taken by Archon to locate the “interested parties,” including a skip trace search, a search of bankruptcy records, a telephone call notice campaign, and public records research. As noted above, however, the affidavit merely sets forth the activities in general terms; it does not specifically state that any of the searches were conducted with respect to Mr. Darling. “[Affidavits with conclusory allegations of fact which are devoid of specific facts are not sufficient to defeat summary judgment.” Cheramie Services, Inc. v. Shell Deepwater Production, Inc., 09-1633, p. 16 (La.4/23/10), 35 So.3d 1053, 1062 (internal citation omitted); see also Smith v. Casino New Orleans Casino, 12-0292, p. 11 (La.App. 4 Cir. 10/3/12), 101 So.3d 507, 514. Conclusory and nonspecific affidavits will “not suffice to require a trial,” even if the moving party cannot demonstrate contrary facts to rebut the conclusory affidavit. See Travelers Ins. Co. v. Liljeberg Enterprises, Inc., 7 F.3d 1203, 1207 (5th Cir.1993). Ms. Surcouf, therefore, does not set forth facts sufficient to establish that the City took any reasonable additional steps.[5]
“While [i]t is not our responsibility to prescribe the form of service that the [government] should adopt,” we note the existence of at least two reasonable additional steps the tax collector could have taken to provide notice to Mr. Darling. Jones, 547 U.S. at 234, 126 S.Ct. 1708, quoting Greene v. Lindsey, 456 U.S. 444, n. 9, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982). The affidavits from Mr. Darling and Mr. Oppenheim reveal that State Farm Acceptance was in possession of Mr. Darling’s California address and would have provided it to the City upon request. Moreover, Mr. Darling’s original act of sale for the Constance Street property listed a mailing address of 738 Milan Street in New Orleans. Both the mortgage and the act of sale were publically recorded in Orleans Parish; there is no evidence, however, that the City attempted to contact State Farm Acceptance [6] or mailed notice to Mr. Darling at the Milan Street address before the tax sale. Considering that the information would have been easily obtainable pursuant to a public records search (which Ar-chon claims it conducted), we find that Ms. Darling has failed to demonstrate that the City provided “notice | ^reasonably calculated, under all circumstances, to apprise interested persons of the pendency of the [tax sale].” Mennonite, 462 U.S. at 795, 103 S.Ct. 2706.
We therefore find that Ms. Surcouf has failed to demonstrate the existence of a genuine issue of material fact with regard to whether the tax collector took reasonable additional steps to notify Mr. Darling of the tax sale after receiving the un *1095 claimed mailed notices. Our de novo review of the record thus confirms that the grant of partial summary judgment was legally correct and the tax sale was properly deemed an absolute nullity. Given this conclusion, we need not address Ms. Surcouf s remaining assignments of error.[7]
DECREE
We affirm the trial judge’s grant of Rex Darling Jr.’s motion for partial summary judgment, declaring the tax sale an absolute nullity. We remand to the trial court for a determination of the reimbursements which are owed by Mr. Darling to Heather Surcouf in order for Mr. Darling to obtain a cancellation of the tax sale.
AFFIRMED AND REMANDED.

. We note that Ms. Surcouf s argument impliedly admits that the pre-tax sale notice to Mr. Darling was constitutionally insufficient.

. It should be noted that the statute states notice under its provisions is sufficient under La. Const, art. VII, § 25; it does not purport to establish sufficiency under the United States Constitution.

. It is important to note that we do not find the statute per se unconstitutional. Although we find it inapplicable to the instant case, there may be other situations in which La. R.S. 47:2157 could be properly applied. The issue, however, is best decided under the facts of a future case.

.As to Ms. Surcouf's argument regarding Mr. Darling's failure to institute annulment proceedings within six months, because we find that Mr. Darling was not afforded due process under the Fourteenth Amendment with regard to the required pre-tax sale notice, as discussed below, we do not address this issue. See Smitko v. Gulf South Shrimp, Inc., 11-2566, pp. 13-15 (La.7/2/12), 94 So.3d 750, *1093 758-59 (holding that because tax sale may have been defective for lack of due process before tax sale, the time limitation for seeking to annul a tax sale did not apply).

. Additionally, neither the affidavit nor Ms. Surcoufs brief specifically alleges that Ar-chon undertook these steps after the City became aware that the mailed notices were returned unclaimed. Though it has not been explicitly stated, we note that Jones and its progeny stand for the proposition that a state must take reasonable additional steps subsequent to receiving the unclaimed mailed notices; any steps taken before could not reasonably be construed as "additional.” See e.g., Okpalobi v. LeBome II, L.L.C., 12-0804, p. 5 (La.App. 4 Cir. 12/5/12), 106 So.3d 640, 643 ("Only if the notice is returned marked unclaimed’ or 'undeliverable’ must the tax collector then take additional steps”).

. It is a reasonable expectation that the holder of a mortgage would likely maintain current information on the whereabouts of its borrower.

. In the same vein, we do not address Mr. Darling’s argument that the tax advertisements failed to comply with the statutory requirements. We do note, however, that to the extent Ms. Surcouf claims that the tax sale advertisements constituted sufficient notice, regardless of any other pretax sale notice, she is incorrect. See Mennonite Bd. Of Missions v. Adams, 462 U.S. 791, 798, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); see also La. Const, art. VII, § 25 A(l). Additionally, because we find that the notice to Mr. Darling was constitutionally insufficient, we do not address the question of whether the City was required to provide notice to State Farm Acceptance.