DEBRA A. CLOUD

VERSUS

EARL M. GIBSON, JR. AND
CHASE MORTGAGE
COMPANY-WEST

\* \* \* \* \* \* \*

NO. 2023-CA-0435

COURT OF APPEAL

FOURTH CIRCUIT

STATE OF LOUISIANA

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-10042, DIVISION "F-14"
Honorable Jennifer M Medley,
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*

(Court composed of Judge Joy Cossich Lobrano, Judge Paula A. Brown, Judge
Karen K. Herman)

Alicia McDowell
TAYLOR & MCDOWELL LAW
1935 W. Airline Highway
Laplace, LA 70068

Shantell Payton Hodges
PAYTON HODGES LAW FIRM
2237 N. Hullen Street, Suite 202
Metairie, LA 70001

COUNSEL FOR DEFENDANTS/APPELLANTS

Scott Joseph Sonnier
ATTORNEY AT LAW
601 Poydras Street, Suite 1620
Suite 1400
New Orleans, LA 70130

COUNSEL FOR PLAINTIFF/APPELLEE

REVERSED IN PART
AFFIRMED IN PART
REMANDED
JULY 30, 2024

This dispute arises from a tax sale of certain immovable property belonging to Earl M. Gibson ("Mr. Gibson"). The tax sale occurred nearly four years after Mr. Gibson's death. The Appellants in this case, Diandra Boutan and Cherlyn Boutan (the "Boutans")—the nieces, universal successors and the only living heirs of Mr. Gibson—seek to appeal the district court's March 20, 2023 judgment. That judgment denied two separate motions for summary judgment filed on behalf of the Boutans and granted summary judgment in favor of the Appellee, Debra A. Cloud ("Ms. Cloud"), naming her as the sole and only owner of 5550 Samovar Drive (the "Property"), located in New Orleans. For the reasons that follow, we reverse that portion of the district court's March 20, 2023 judgment that granted summary judgment in favor of Ms. Cloud and named her as the sole owner of the Property; we affirm that portion of the district court's judgment that denied the Boutans' motions for summary judgment; and we remand this matter for further proceedings consistent with this opinion.

**FACTUAL AND PROCEDURAL HISTORY**

Mr. Gibson was the record owner of certain immovable property located in Orleans Parish, bearing the municipal address of 5550 Samovar Drive, New Orleans, Louisiana 70126. According to Ms. Cloud, who lived only two houses down from the Property, Mr. Gibson took up residence there sometime in 1980, together with his parents and brother.[1] By 1993, those family members were all deceased and Mr. Gibson continued to dwell at the Property alone until Hurricane Katrina struck New Orleans in late August 2005. In her deposition testimony, Ms. Cloud described that in the aftermath of the hurricane her home was flooded with approximately six feet of water, and that she and her neighbors were forced to evacuate their homes. Ms. Cloud offered that, while she had evacuated to Meridian, Mississippi, she was unaware of where Mr. Gibson fled.[2]

Around January of 2006, Ms. Cloud visited her property on Samovar Drive in order to assess the damage wreaked by Hurricane Katrina. At this time she encountered Mr. Gibson, who was evaluating his own losses at his Property. In a seemingly brief chat, the two did not exchange cell phone numbers and Mr. Gibson did not indicate where he had evacuated to or whether he had any intentions of repairing or returning to the Property. This was the last time Ms. Cloud would see or have any type of communication with Mr. Gibson.

Over the ensuing years, Mr. Gibson continued to pay the *ad valorem* taxes until the year of his death in 2012. Ms. Cloud testified that she observed an

---

[1] Ms. Cloud's home is located at 5610 Samovar Drive.

[2] Cherlyn Boutan testified in her deposition that she believed Mr. Gibson had been displaced to somewhere in Texas.

inspector for the City of New Orleans Code Enforcement and Hearings Bureau examining the Property in 2014. This inspection ultimately led to an administrative judgment against Mr. Gibson in April 2015 for multiple code enforcement violations, resulting in a lien being recorded against the Property in the amount of four thousand six hundred fifty-five dollars ($4,655.00). This activity aroused Ms. Cloud's curiosity, so she sent a letter to a Mississippi address that she had located for Mr. Gibson in order to inquire as to what his intentions were with the Property. The letter was returned to her marked undeliverable, and Ms. Cloud was equally unsuccessful in locating an obituary or death notice for Mr. Gibson.

With the assistance of her daughter, in early 2016 Ms. Cloud was able to discover an online notice that the Property would be offered at tax sale for delinquent *ad valorem* taxes spanning the years 2013-2015. Following, on April 12, 2016, Ms. Cloud placed the winning bid for a one hundred percent (100%) interest in the Property as reflected in the tax sale certificate, which was subsequently recorded in the conveyance records of the Orleans Parish Land Records Division at CIN 599121 on May 20, 2016. A little over three years later, no one had attempted to redeem the Property, so Ms. Cloud filed a petition to quiet title on September 24, 2019.

Ms. Cloud was questioned during her deposition regarding what she understood her rights and responsibilities to the Property to be following the tax sale. She testified that she understood that there was a three-year redemptive

3

period, after which time if no one redeemed the Property, Ms. Cloud would own the Property, provided that she complied with the rest of the tax sale processes for quieting title. Furthermore, she testified that she believed that, along with continuing to pay the yearly taxes for the Property, she was also responsible for securing the Property—specifically, she referenced cutting the grass, fixing a hole in the roof and keeping out vagrants that had been living in the house prior to her tax sale purchase. To that end, beginning sometime in 2017, Ms. Cloud ultimately invested approximately one hundred twenty-five thousand dollars ($125,000.00) to repair the Property.

In her petition to quiet title, Ms. Cloud noted that there had been several unsuccessful attempts to establish contact with either Mr. Gibson or his vacant succession and any heirs, so she included a request that the district court appoint a curator *ad hoc* to represent the interests of the absent defendant or defendants. The district court granted this request by signing an order appointing Shantell Payton Hodges ("Ms. Hodges") as curator on September 27, 2019, and the notice of appointment was issued by the deputy clerk of the district court on November 22, 2019. The petition to quiet title was personally served on Ms. Hodges on December 20, 2019. Ms. Hodges then filed an answer to the petition on January 22, 2020, asserting only general denials of the allegations made by Ms. Cloud. A little over a month later, Ms. Cloud filed a motion for summary judgment on March 3, 2020, and again urged the district court to confirm and quiet title of the Property in her favor. Although a sworn affidavit by the court reporter, Shannon

4

Deruise, is the only document in the record evidencing either a hearing or a judgment associated with this motion, both parties concede that Ms. Cloud's motion was denied.[3]

On September 11, 2020, a notice of representation and request for notice was filed into the record on behalf of Cherlyn Boutan. In her capacity as curator, Ms. Hodges filed a note of evidence on October, 14, 2020, in which she detailed her search to locate either Mr. Gibson or any of his heirs. Her diligent efforts yielded Mr. Gibson's only two remaining heirs, his nieces Cherlyn and Diandra Boutan. Through these contacts, Ms. Hodges was also successful in locating a death certificate for Mr. Gibson from the DeSoto County coroner's office in Mississippi, which indicated that he had died on June 23, 2012. On the same day she filed the note of evidence, Ms. Hodges additionally filed a motion to withdraw as curator, which the district court immediately granted.

Shortly thereafter, on November 5, 2020, the Boutans filed a motion to substitute parties and to intervene. In this pleading, the Boutans indicated that they had opened the succession of Mr. Gibson and attached an October 13, 2020 judgment of possession, declaring that each of them owned an undivided one-half interest in the Property.[4] Moreover, the Boutans' prayer for relief asked the district

---

[3] Ms. Deruise's affidavit explained that the judgment and any video or audio recordings of the hearing were lost in the transition of the then-presiding judge when she relocated after being elected to the Louisiana Supreme Court. She also swore that she recalled that the judge commented that "a dead man can't be served."

[4] This judgment was obtained by the Boutans in the Civil District Court for the Parish of Orleans, Division "G," Case No. 2020-08606.

court to declare the 2016 tax sale null and void for failure to provide sufficient notice.

After continued motion practice, the Boutans jointly filed a motion for summary judgment on August 10, 2021, asserting again that the tax sale was a relative nullity due to a lack of notice and that Ms. Cloud was a bad faith tax sale purchaser.[5]  Following, on March 21, 2022, Ms. Cloud filed another motion for summary judgment, arguing that under the Louisiana Legislature's 2008 revisions to the statutes governing tax sales, notice was properly given and the Boutans' reconventional demand to declare the tax sale a nullity was prescribed.  On the same day, Cherlyn Boutan filed a separate motion for summary judgment, but also filed a joint motion with Diandra Boutan to adopt the motions for summary judgment filed by each defendant.[6]  The competing motions came for hearing before the district court on January 17, 2023.  A written judgment was signed on

---

[5] At the time this pleading was filed, the Boutans were represented by the same counsel.  On February 1, 2022, now free from her duties as curator in this matter, Ms. Hodges enrolled as counsel for Cherlyn Boutan.

[6] Ms. Cloud filed oppositions to both the August 10, 2021 and March 21, 2022 motions for summary judgment.  In each, Ms. Cloud asserted that the Property had been sold in satisfaction of the recorded code enforcement lien and, as a result, there was no redemption period.  Louisiana Revised Statutes 13:2575 lays out the procedures by which a municipality may adjudicate a code enforcement lien against a property.  Ms. Cloud points specifically to La. R.S. 13:2575(C)(2), which provides, in part:

> Failure to pay the liens shall cause the immovable property in or on which the violation occurred to be subject to the same provisions of law as govern tax sales of immovable property when the immovable property has been declared blighted or a public nuisance by an administrative hearing officer acting in accordance with this Section, the property owners and other parties having interests in the property shall not have a right of redemption.

The district court disregarded this argument, stating that there was no blight adjudication, and that the Property was sold by virtue of its tax delinquency.  However, this argument was not raised in her brief to this Court; therefore, we will pretermit any discussion of this issue.

6

March 20, 2023, and mailed on April 3, 2023. That judgment denied as moot the Boutans' motions for summary judgment to annul the tax sale and granted Ms. Cloud's motion for summary judgment, naming her as the sole owner of the Property. This appeal followed.

## DISCUSSION

*Suspensive Appeal*

As an initial matter, we note that the Boutans jointly filed a motion for suspensive appeal on April 20, 2023. The district court granted the motion and ordered the Boutans to post two hundred twenty-five thousand dollars ($225,000.00) as security. In response, the Boutans filed an emergency motion to reconsider the appeal bond, which the district court denied. The record is devoid of any evidence that security was furnished or that an appeal bond was secured; however, this is not fatal to the Boutans' cause. This Court has long recognized that "[i]n ordinary proceedings, a failure to pay a suspensive appeal bond is not generally considered grounds for dismissal because the appeal is simply converted to a devolutive appeal when the appeal bond is not timely paid." *Makarna v. Champion Foods, Inc.*, 21-0322, p. 2 (La. App. 4 Cir. 11/3/21), 366 So.3d 139, 141 n.1 (quoting *Franco v. Franco*, 04-0967, p. 13 (La. App. 4 Cir. 7/28/04), 881 So.2d 131, 139). Accordingly, we convert the present suspensive appeal to a devolutive appeal.

*Assigned Errors*

7

The Boutans offer fourteen separate assignments of error that we believe can best be summarized in this way: The district court erred when it denied the Boutans' motions for summary judgment and granted Ms. Cloud's motion for summary judgment, primarily because the statutory requirements of notice for the tax sale were not met in this case.[7]

---

[7] Specifically, the Boutans assert the following errors:

**I**. The trial court erred when it denied Defendants'/Appellants' motion for summary judgment where it is undisputed that there were no genuine issues of material facts and jurisprudence from the Louisiana Supreme Court, the Fourth Circuit as well as the Louisiana Constitution entitled them to judgment as a matter of law.

**II**. The trial court erred when it denied Defendants'/Appellants' motion for summary judgment where it is undisputed that a deceased person cannot receive notice and Earl Gibson died before the tax delinquency and tax sale notices were mailed and on the date of the tax sale.

**III**. The trial court erred when it denied Defendants'/Appellants' motion for summary judgment where it [is] undisputed that Defendants/Appellants as the sole heirs [sic]

**IV**. The trial court erred when it denied the Defendant's [sic]/Appellants' motion for summary judgment when it is undisputed that Defendants/Appellants as the sole heirs of Earl Gibson did not receive notice of the tax delinquency and tax sale.

**V**. The trial court erred when it denied Defendants'/Appellants' motion for summary judgment based on Louisiana Revised Statute 47:2286 which is not applicable to this case concerning a deceased tax debtor.

**VI**. The trial court erred when it denied Defendants'/Appellants' motion for summary judgment by failing to apply the basic tenets of statutory construction and interpretation.

**VII**. The trial court erred when it denied Defendants'/Appellants' motion for summary judgment by failing to adhere to Fourth Circuit jurisprudence recognizing absolutely nullity of tax sales.

**VIII**. The trial court erred when it denied Defendants'/Appellants' motion for summary judgment despite their entitlement to redemptive nullity as a matter of law.

**IX**. The trial court erred when it granted Plaintiff/Appellee, Debra Cloud's motion for summary judgment when genuine issues of material fact exist as to the steps taken by the tax collector to identify and locate the property owner and/or interested persons.

*Jurisdiction*

"Before considering the merits of any appeal, an appellate court has 'the duty to determine *sua sponte* whether [proper] jurisdiction exists, even when the parties do not raise the issue." *Breston v. DH Catering, LLC*, 23-0460, p. 13 (La. App. 4 Cir. 2/5/24), 384 So.3d 953, 962 (alteration in original) (quoting *Succession of Hickman*, 22-0730, p. 5 (La. App. 4 Cir. 3/15/23), 359 So.3d 584, 589). In the matter before us, the Boutans seek review of the district court's denial of their motion for summary judgment and the granting of Ms. Cloud's motion for summary judgment. Ms. Cloud questions whether this Court has jurisdiction to consider the denial of the Boutans' motion for summary judgment.

"As this Court has unequivocally held, '[t]he Code of Civil Procedure expressly provides that a judgment denying a motion for summary judgment is not appealable.'" *Id.* at p. 14, 384 So.3d at 962 (first quoting *Precept Credit Opportunities Fund, LP v. Dave*, 23-0104, p. 8 (La. App. 4 Cir. 10/3/23), 376 So.3d 210, 217; then quoting La. C.C.P. art. 968, which provides, in pertinent part, that "[a]n appeal does not lie from the court's refusal to render . . . summary

---

**X**. The trial court erred when it granted Plaintiff/Appellee, Debra Cloud's motion for summary judgment when genuine issues of material fact exist where it shifted the burden of proof of the tax collector and tax purchaser onto Defendants/Appellants.

**XI**. The trial court erred when it granted Plaintiff/Appellee, Debra Cloud's motion for summary judgment when genuine issues of material fact exist[.]

**XII**. The trial court erred when it granted Plaintiff/Appellee, Debra Cloud's motion for summary judgment when genuine issues of material fact exist as to whether the tax collector made reasonable efforts in the instant tax sale.

**XIII**. The trial court [erred] as a matter of law in determining that Plaintiff/Appellee was not in bad faith, as bad faith is a question of fact that cannot be decided on summary judgment.

**XIV**. The trial court [erred] as a matter of public policy when it granted Plaintiff/Appellee's motion for summary judgment as it is unconscionable that the Louisiana Legislature would deny a person their fundamental property rights.

9

judgment"). "Further, '[a] judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment.'" *Id.* (quoting La. C.C.P. art. 1841).

"However, an appellate court may consider interlocutory judgments . . . as part of an unrestricted appeal from a final judgment." *Precept*, 23-0104, p. 9, 376 So.3d at 218 (quoting *Everett v. Air Products & Chemicals, Inc.*, 22-0539, p. 3 (La. App. 4 Cir. 5/2/23), 382 So.3d 216, 222-23). "And as [t]his Court has explained, '[a]lthough the denial of a motion for summary judgment is not appealable, the granting of summary judgment is a final judgment with the same effect as if a trial had been had upon evidence regularly adduced.'" *Breston*, 23-0460, p. 14, 384 So.3d at 962 (quoting *Precept*, 23-0104, p. 10, 376 So.3d at 218). Thus, we are vested with jurisdiction to examine the denial of the Boutans' motion for summary judgment together with the granting of Ms. Cloud's motion for summary judgment.

*Standard of Review*

This Court has frequently and consistently recited that "[i]t is well-settled law that '[t]his Court reviews the granting of '[a] summary judgment on appeal *de novo*, using the same criteria that govern the [district] court's determination of whether summary judgment is appropriate.'" *Id.* at p. 12, 384 So.3d at 961 (quoting *Williams v. Infirmary*, 23-0180, p. 6 (La. App. 4 Cir. 12/20/23), 382 So.3d 345, 351). "Generally, on a motion for summary judgment, the burden of proof remains with the mover." *Id.* at pp. 12-13, 384 So.3d at 961. "But, if the moving party will not bear the burden of proof on the issue at trial and identifies an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to counter that assertion and establish that he will be able to satisfy his

10

evidentiary burden of proof at trial." *Id*. at p. 13, 384 So.3d at 961-62. "However, if the opponent of the motion cannot do so, there is no genuine issue of material fact and summary judgment will be granted." *Id*. at p. 13, 384 So.3d at 962.

*Applicable Law*

"Article VII § 25 of the Louisiana Constitution establishes the basis upon which property owners who are in arrears for payment of *ad valorem* taxes may be divested of their ownership rights in immovable property."[8] *Cooper v. Brisco*, 22-0196, p. 5 (La. App. 4 Cir. 10/18/22), 366 So.3d 552, 556. In an effort to

---

[8] Louisiana Constitution Article VII, § 25 provides, in pertinent part:

> Section 25. (A) Tax Sales. There shall be no forfeiture of property for nonpayment of taxes. However, at the expiration of the year in which the taxes are due, the collector, without suit, and after giving notice to the delinquent in the manner provided by law, shall advertise for sale the property on which the taxes are due. The advertisement shall be published in the official journal of the parish or municipality, or, if there is no official journal, as provided by law for sheriffs' sales, in the manner provided for judicial sales. On the day of sale, the collector shall sell the portion of the property which the debtor points out. If the debtor does not point out sufficient property, the collector shall sell immediately the least quantity of property which any bidder will buy for the amount of the taxes, interest, and costs. The sale shall be without appraisement. A tax deed by a tax collector shall be prima facie evidence that a valid sale was made.
>
> (B) Redemption. The property sold shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption.
>
> (C) Annulment. No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given. The fact that taxes were paid on a part of the property sold prior to the sale thereof, or that a part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid. No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser; however, this shall not apply to sales annulled because the taxes were paid prior to the date of sale.
>
> (D) Quieting Tax Title. The manner of notice and form of proceeding to quiet tax titles shall be provided by law.

modernize and clarify the procedures associated with this constitutional authority to conduct tax sales, in 2008 the Louisiana Legislature enacted Louisiana Revised Statutes Title 47, subtitle 3, chapter 5, which became effective on January 1, 2009. One of the new concepts included with this reform measure appeared in La. R.S. 47:2286, which provides:

> No tax sale shall be set aside except for a payment nullity, redemption nullity, or a nullity under R.S. 47:2162,[9] all of which are relative nullities. The action shall be brought in the district court of the parish in which the property is located. In addition, the action may be brought as a reconventional demand or an intervention in an action to quiet title under R.S. 47:2266 or as an intervention in a monition proceeding under R.S. 47:2271 through 2280.

"'Redemption nullity' means the right of a person to annul a tax sale in accordance with R.S. 47:2286 because he was not duly notified at least six months before the termination of the redemptive period." La. R.S. 47:2122(10).

The "redemptive period" is defined by our constitution, wherein it explains that "[t]he property sold shall be redeemable for three years after the date of recordation of the tax sale." La. Const. Art. VII, § 25(B). "It is well settled that the [redemptive] periods provided in the Louisiana Constitution are peremptive." *Precept*, 23-0104, p. 15, 376 So.3d at 220 (quoting *Coastal Dev. Grp., Inc. of Greater New Orleans v. Lund*, 22-0598, p. 4 (La. App. 4 Cir. 1/11/23), 356 So.3d 1174, 1177). "[P]eremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." *Id.* at p. 15, 376 So.3d at 221 (quoting La. C.C. art. 3458).

---

[9] La. R.S. 47:2162 provides, in pertinent part:

> The tax collector or tax assessor for the political subdivision, or any other person acting on behalf of the political subdivision whose duties are to assess or collect ad valorem taxes for the political subdivision, shall not buy, either directly or indirectly, any property or tax sale title sold or offered for sale for ad valorem taxes imposed by that political subdivision.

"Peremption may not be renounced, interrupted, or suspended." *Id.* (quoting La. C.C. art. 3461). "Peremption differs from prescription in two respects: (1) the expiration of the peremptive time period destroys the cause of action itself; and (2) nothing may interfere with the running of a peremptive time period." *Id.* (quoting *Coastal Dev. Grp.*, 22-0598, p. 4, 356 So.3d at 1177).

Louisiana Revised Statutes 47:2787 dictates the timeframe in which a redemption nullity must be filed:

> A. Any action to annul a tax sale on grounds of a redemption nullity shall be brought before the earlier of:
>
> (1) Six months after a person is duly notified using a notice, other than the notice provided in R.S. 47:2156 that is sent between the time that the redemptive period ends and five years after the date of the recordation of the tax sale certificate.
>
> (2) If a person is duly notified more than five years after the date of the recordation of the tax sale certificate, sixty days after the person is duly notified.

And finally, La. R.S. 47:2122(4) provides, in relevant part:

> (4) "Duly notified" means, with respect to a particular person, that an effort meeting the requirements of due process of law has been made to identify and to provide that person with a notice that meets the requirements of R.S. 47:2156, 2157, 2206, 2236, or 2275, or with service of a petition and citation in accordance with R.S. 47:2266, regardless of any of the following:
>
> (a) Whether the effort resulted in actual notice to the person.

With these precepts in mind, we will now examine the Boutans' arguments pertaining to the competing motions for summary judgment. First, however, we will outline the chronology pertinent to our review of the case *sub judice*:

- **June 23, 2012**: Mr. Gibson died.

- **April 12, 2016**: Ms. Cloud obtained a tax sale certificate for a one hundred percent (100%) interest in the Property for delinquent taxes spanning the years 2013-2015.

- **May 20, 2016**: The tax sale certificate was recorded in the Orleans Parish conveyance records, beginning the three-year peremptive period for redemption per La. Const. Art. VII § 25(B).

- **May 20, 2019**: The peremptive period for redemption ended.

- **September 24, 2019**: Ms. Cloud filed a petition to quiet title on the Property together with the tax sale certificate, and with a request that a curator *ad hoc* be appointed for Mr. Gibson.

- **September 27, 2019**: The district court signs an order to appoint Ms. Hodges as curator for Mr. Gibson.

- **November 22, 2019**: A notice of appointment was issued by the deputy clerk of the district court to appoint Ms. Hodges as curator for Mr. Gibson.

- **December 20, 2019**: Ms. Hodges was served with Ms. Cloud's petition to quiet title.

- **July 27, 2020**: Ms. Hodges located the Boutans and served them with the petition to quiet title.

- **October 13, 2020**: The Boutans obtained a judgment of possession for Mr. Gibson's property after opening his succession.

- **November 5, 2020**: The Boutans filed a motion to intervene and make a reconventional demand that the tax sale be declared null and void for lack of sufficient notice.

*The Boutans' Motions for Summary Judgment*

The Boutans offer a variety of arguments as to why the district court was in error when it denied their motion for summary judgment. They essentially assert that: (1) both pre-sale and post-sale notices sent to Mr. Gibson were ineffective because he was deceased at the time notices were attempted; therefore, the tax sale is absolutely null; (2) the Boutans' due process rights have been impeded because they did not receive notice of the tax sale; therefore, the tax sale is absolutely null; (3) alternatively, the Boutans are entitled to a redemption nullity because they filed their reconventional demand within six months of receiving notice from Ms. Hodges in her capacity as curator; and (4) there was a genuine issue of material

fact as to whether the tax collector complied with the statutory notice requirements to give notice six months in advance of the expiration of the redemptive period, pursuant to La. R.S. 47:2122(10) and La. R.S. 47:2156(B)(1).[10] Ms. Cloud counters that the jurisprudence relied upon by the Boutans, concerning notice to a deceased person, is all predicated on the version of the tax sale laws prior to the 2008 revisions and is inapposite here. Further, she argues that Ms. Hodges was correctly appointed as curator *ad hoc* pursuant to La. R.S. 47:2266(A)(2),[11] and that Ms. Hodges was the proper party to receive post-sale notice as explained by La. R.S. 47:2156(D), which dictates that:

> If the tax sale party is deceased, the notice to a tax sale party provided for pursuant to this Section shall be sufficient if made to the succession representative, if applicable, or to a curator as provided by Code of Civil Procedure Article 5091.[12]

---

[10] The version of La. R.S. 47:2156(B)(1) that was in effect at the time of the 2016 tax sale directed that:

> For each property for which tax sale title was sold at tax sale to a tax sale purchaser, each collector shall within thirty days of the filing of the tax sale certificate, or as soon as practical thereafter, provide written notice to the following persons that tax sale title to the property has been sold at tax sale. The notice shall be sent by postage prepaid United States mail to each tax notice party and each tax sale party whose interest would be shown on a thirty-year mortgage certificate in the name of the tax debtor and whose interest was filed prior to the filing of the tax sale certificate.

[11] Louisiana Revised Statutes 47:2266 provides, in pertinent part:

> A. (1) After expiration of the redemptive period, an acquiring person may institute an ordinary proceeding against the tax sale parties whose interests the petitioner seeks to be terminated . . . .
>
> (2) The petition and citation shall be served as in ordinary suits; however, if a tax sale party is a nonresident of the state, is unknown, or his residence is unknown, the court shall appoint a curator ad hoc to represent him and receive service . . . . If no proceeding to annul the sale has been instituted after the lapse of six months after the date of service of petition and citation, judgment shall be rendered quieting and confirming the title and the full ownership interest therein.

[12] Louisiana Code of Civil Procedure Article 5091 offers, in part:

> A. The court shall appoint an attorney at law to represent the defendant, on the petition or ex parte written motion of the plaintiff, when:

However, as explained more fully below, we cannot consider this provision because it did not become effective until 2018. Lastly, Ms. Cloud asserts that the Boutans' own motion for summary judgment, which had attached the tax sale certificate, created the presumption that the tax sale was valid and that the burden was on them to prove any irregularities in the process.

*Absolute Nullity*

As previously noted elsewhere in this opinion, La. R.S. 47:2286 introduced a new concept into the 2008 tax sale revisions when it pronounced that there were now only three relative nullities that may be used to set aside a tax sale: a payment nullity, redemption nullity, or a nullity under La. R.S. 47:2162.[13] This Court has interpreted that to mean "[t]ax sales may no longer be attacked as absolute nullities." *Stow-Serge v. Side by Side Redevelopment, Inc.*, 20-0015, p. 5 (La. App. 4 Cir. 6/10/20), 302 So.3d 71, 76. Section (b) of the official comments to La. R.S. 47:2286 clarifies that "[i]n keeping with the emphasis of the revision, the important notice is a notice of the right to redeem."

The Boutans first assert that because Mr. Gibson was deceased at the time the Property became delinquent, it was impossible for him to be duly notified at

---

(1) It has jurisdiction over the person or property of the defendant, or over the status involved, and the defendant is:

(a) A nonresident or absentee who has not been served with process, either personally or through an agent for the service of process, and who has not waived objection to jurisdiction.

\* \* \*

(c) Deceased and no succession representative has been appointed.

(2) The action of proceeding is in rem and:

(a) The defendant is dead, no succession representative has been appointed, and his heirs and legatees have not been sent into possession judicially.

[13] *See* n.9, *supra*.

any point in the tax sale process. They offer four separate cases for the premise that service on a dead person is no service at all.[14] For this reason, they claim that the tax sale in this case should be declared an absolute nullity. However, our review of those cases finds that each of those decisions were rendered using the tax sale laws in effect prior to the 2008 revisions. In fact, the decision in *Thomas v. Tobin*, the only one of these cases rendered after the 2008 revisions, explains that because the tax sale at issue there occurred in 2007, that court would be analyzing those claims using the pre-revision laws.[15] 15-1362, p. 6 (La. App. 1 Cir. 6/3/16), 197 So.3d 209, 213 at n.3. The Louisiana Supreme Court has explained that the law in effect at the time of the tax sale is controlling regardless of when the case is adjudicated. *Central Props. v. Fairway Gardenhomes, LLC*, 16-1855, 1946, p. 10 (La. 6/27/17), 225 So.3d 441, 448. As such, that jurisprudence has no binding or convincing use in our determination in the case *sub judice*. This argument is not persuasive.

Next, the Boutans urge this Court to consider that our own jurisprudence dictates that, as Mr. Gibson's heirs, lack of pre-sale notice to them renders the tax sale an absolute nullity. In support of this position, the Boutans point to three cases previously decided by this Court—namely, *Deichmann v. Moeller*, 18-0358 (La. App. 4 Cir. 12/28/18), 318 So.3d 833; *Waiters v. deVille*, 20-0556 (La. App. 4 Cir. 12/30/20), 365 So.3d 544; and *Eclectic Inv. Partners, LP v. Wilson*, 22-0197 (La. App. 4 Cir. 11/30/22), 367 So.3d 25. For the reasons set forth below, we disagree.

---

[14] *Blythe v. Zor, Inc.*, 148 So.2d 832, 833 (La. 1963); *Robinson v. Zor, Inc.*, 174 So.2d 154, 155 (La. App. 4th Cir. 1965); *Di Giovanni v. Cortinas*, 216 La. 687, 695, 44 So.2d 818, 820 (La. 1950); *Thomas v. Tobin*, 15-1362, pp. 7-8 (La. App. 1 Cir. 6/3/16), 197 So.3d 209, 213-14.

[15] *See* n.10, *supra*.

*Deichmann*

In *Deichmann*, while considering the validity of a 2010 tax sale, it was found that "Louisiana courts continue to recognize an 'absolute nullity' where pre-tax-sale notification requirements have not been met, notwithstanding the provisions of La. R.S. 47:2286." *Deichmann*, 18-0358, p. 6, 318 So.3d at 837. To reach this conclusion, the Court cited to *Mooring Tax Asset Group, L.L.C. v. James*, 14-0109, p. 5 (La. 12/9/14), 156 So.3d 1143, 1145 and *Surcouf v. Darling*, 15-0278, p. 11 (La. App. 4 Cir. 10/21/15), 177 So.3d 1085, 1092. Additionally, quoting from *Engine 22, LLC v. Land & Structure, LLC*, 16-0664, p. 4 (La. App. 4 Cir. 4/5/17), 220 So.3d 1, 4, *Deichmann* restates the proposition that "[a] tax sale without proper notice is an absolute nullity." 16-0664, p. 4 (La. App. 4 Cir. 4/5/17), 220 So.3d 1, 5. We find that reliance on these cases is problematic.

*Mooring* dealt with a 2004 tax sale and relied mainly on the holdings found in *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566 (La. 7/2/12), 94 So.3d 750, 759 and *Lewis v. Succession of Johnson*, 05-1192 (La. 4/4/06), 925 So.2d 1172, 1177.[16] *Smitko* and *Lewis* each dealt with pre-revision tax sales and used La. R.S. 47:2180, a statute that was repealed in the 2008 revisions, for the tenet that a defect in pre-sale notice rendered a tax sale an absolute nullity. Both of these decisions were subsequently overruled by the Supreme Court case of *Central Props. v. Fairway Gardenhomes, LLC*, wherein that Court found that proper post-sale notice was sufficient to cure any defects in pre-sale notice and satisfied the due process requirements found in the United States and Louisiana Constitutions. 16-1855, 1946, p. 12, 225 So.3d at 449. The *Central* Court also explained that under the

---

[16] *Mooring* also relied on *Quantum Resources Management, LLC v. Pirate Lake Oil Corp.*, 12-1472 (La. 3/19/13), 112 So.3d 209, 215, which drew its reasoning from *Smitko*.

2008 revisions, specifically the addition of La. R.S. 47:2286, only three types of nullities apply to tax sales, none of which is an absolute nullity. *Id.*

*Surcouf*, relying on *Mooring* and *Smitko*, pronounced that "we reject [the] contention that post-tax sale notice can cure constitutionally defective pre-tax sale notice." 15-0278, p. 12, 177 So.3d at 1093. However, as we just discussed, this interpretation was corrected by the subsequent ruling in *Central*.

Finally, in *Engine 22*, the principle that "[a] tax sale without proper notice is an absolute nullity," was drawn from *Cititax Group., L.L.C. v. Gibert*, 12-0633, 12-0634 (La. App. 4 Cir. 12/19/12), 108 So.3d 229. *Cititax* was faced with a 2002 tax sale and relied heavily on *Smitko* to reach its decision. Nonetheless, we previously noted that, as countenanced by the *Central* Court, the law in effect at the time of the tax sale is controlling.

*Waiters v. deVille*

In *Waiters* it was decided that defective pre-sale notice related to noncompliance with the statutory requirements for advertisement of the tax sale was sufficient to declare a tax sale null and void. This result was premised on the *Deichmann* Court's conclusion that Louisiana courts still recognize lack of pre-sale notice as an absolute nullity,[17] and also on its reliance upon two cases decided well before the 2008 revisions—*Western Lands Co. v. Lindsay*, 307 So.2d 412 (La. App. 4th Cir. 1975) and *San Roman Enterprises, Inc. v. Plaisance*, 01-1082 (La. App. 5 Cir. 12/26/01), 806 So.2d 788.

*Eclectic Inv. Partners, LP v. Wilson*

---

[17] *Waiters*, 20-0556, p. 20, 365 So.3d at 558-59.

The defendant in *Eclectic* cited to both *Deichmann* and *Waiters* in support of its position that defects in pre-sale notice had been recognized as absolute nullities. However, the *Eclectic* Court did not comment on the validity of those decisions; rather, it distinguished those cases on the basis that each dealt with non-compliance with La. R.S. 43:203,[18] which was not analogous to the facts before it. Ultimately, the Court held that the defendant was entitled to a redemptive nullity because the plaintiff had not sent notice at least six months in advance to warn the defendant of the impending expiration of the redemptive period and that the defendant had timely filed its petition to annul. 22-0197, pp. 10-11, 367 So.3d at 31-32.

Our plain reading of the statutory scheme laid out through the 2008 revisions indicates that, in accordance with La. R.S. 47:2122(4)(a), it is of no moment that the pre-sale notices did not reach a person. Moreover, our jurisprudence instructs that "a deficiency in pre-tax sale notice is insufficient for purposes of nullifying a tax sale." *Spain v. H&H Investors, L.L.C.*, 23-0491, pp. 3-4 (La. App. 4 Cir. 9/26/23), 382 So.3d 312, 314 (first citing *Sunset Harbour v. Brown*, 22-0572, p. 6 (La. App. 4 Cir. 1/9/23), 356 So.3d 1167, 1171-72; then quoting *PCOF Properties, L.L.C. v. Joseph*, 21-0341, p. 6 (La. App. 4 Cir. 12/1/21), 332 So.3d 220, 224 n.2, "only deficiencies in post-tax sale notice provide a ground for seeking nullification of a tax sale"). On the other side of the same coin, "this Court has recognized that 'any deficiency in pre-sale notices can be cured by proper post-sale notice.'" *Id.* at p. 4, 382 So.3d at 314 (quoting *Klein v. Henderson*, 21-0317, p. 19 (La. App. 4 Cir. 11/17/21), 332 So.3d 764, 777 n.13).

---

[18] Louisiana Revised Statutes 43:203(2) sets forth the advertising requirements for a judicial tax sale: "When two publications are required of notice of a judicial sale by public auction, the first newspaper advertisement of such notice shall be published at least thirty days before the date of the judicial sale, and the second advertisement shall be published not earlier than seven days before, and not later than the day before, the judicial sale."

*Due Process*

Notwithstanding, "[i]t is well-settled that, under the Fourteenth Amendment to the United States Constitution and La. Const. art. I, § 2, deprivation of property by adjudication must be preceded by notice and opportunity to be heard appropriate to the nature of the case." *Central*, 16-1855, p. 8, 225 So.3d at 447 (first citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656-57 (1950); then citing *Tietjen v. City of Shreveport*, 09-2116, pp. 4-5 (La. 5/11/10), 36 So.3d 192, 194-95). As our Supreme Court went on to explain, "[i]n *Mullane*, the Supreme Court established that '[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at p. 9, 225 So.3d at 447.

"Article VII, Section 25(A) of the Louisiana Constitution of 1974 requires the tax collector to provide notice 'in the manner provided by law' of the tax delinquency and the tax sale to all owners of record of any interest in the property." *Id.* at p. 10, 225 So.3d at 447. In discussing the requirements to demonstrate whether one has been duly notified, this Court determined in *Jon Loy, Inc. v. Allen* that "La. R.S. 47:2153 outlines what actions constitute a reasonable and diligent effort that comport with due process requirements." 23-0645, p. 6 (La. App. 4 Cir. 4/18/24), ___ So.3d ____, ____, 2024 WL 1671960 at *3. Specifically, La. R.S. 47:2153(A)(1)(c) mandates that:

> (i) If the written notice by certified mail is returned for any reason, the tax collector shall demonstrate a reasonable and diligent effort to provide notice of the tax sale to the tax debtor. To demonstrate a reasonable and diligent effort, the tax collector shall attempt to deliver notice of the delinquent taxes and tax sale by first class mail to the last

21

known address of the debtor and take any three of the following additional steps to notify the tax debtor:

(aa) Perform a computer search of digitized records and databases of the clerk of court or sheriff's office for addresses of other properties that may be owned by the debtor.

(bb) Contact the tax assessor of the parish in which the property is located for the addresses of other properties that may be owned by the debtor.

(cc) Examine the mortgage or conveyance records of the parish where the property is located to determine whether there are any other transactions pertaining to the property.

(dd) Attempt personal or domiciliary service of the notice.

(ee) Post the notice of tax sale at the property.

The *Jon Loy* Court went on to explain that "[a]lthough this specific statute relates to the duties of the tax collector in sending notice, if the tax purchaser decides to use the catch-all provision under La. R.S. 47:2157[(2)][19] to cure any prior noticing

---

[19] Louisiana Revised Statutes 47:2157 directs, in pertinent part:

A. (1) Upon the expiration of the applicable redemptive period, the tax sale purchaser may send a notice to a tax sale party whose interest the tax sale purchaser intends to terminate that the party has until the later of:

\* \* \*

(b) Six months after the date of the notice if five years have not elapsed from the filing of the tax sale certificate, to challenge, in a court of competent jurisdiction, the tax sale.

(2) This notice shall constitute a notice of sale, and sending of this notice shall constitute the service of the notice of sale under Article VII, Section 25 of the Louisiana Constitution. This notice shall be sufficient without regard to whether the notice of the tax sale or any other notice has been given. The notice shall be sufficient if it is in the following form:

**"This is an important legal notice.**
**Please read it carefully. You will receive no further notice.**
**[Date]**

[Name]

[Address]

[City], [ST] [Zip]

RE:      Property:      [Property Address]

deficiencies, then the tax sale purchaser should also comply with these due process efforts." *Id.* at p. 7, ___ So.3d ____, ____, 2024 WL 1671960, at *4. "To hold otherwise would risk people losing their properties without notice and in violation of their due process rights." *Id.*

Considering the unique set of facts before us, and pursuant to our *de novo* review, we find that there is a genuine issue of material fact as to whether the requirements of due process were met in this case. Our review of the record indicates that the district court had before it the affidavit of Anne Marie Sledge ("Ms. Sledge") when weighing the competing motions for summary judgment. Ms. Sledge averred that she was the title attorney manager at CivicSource, a third-party contractor for the City of New Orleans who was hired to provide services related to the collection of delinquent property taxes, including tax sales. We find this affidavit to be lacking in specificity regarding the steps taken by CivicSource or Ms. Sledge, particularly in relation to providing notice at least six months prior to the expiration of the redemptive period. This affidavit mostly contains boilerplate language reciting the policies and procedures of CivicSource without outlining what steps were actually performed in this case. This stands in stark contrast to the highly detailed note of evidence provided by Ms. Hodges, who painstakingly documented her every attempt to locate Mr. Gibson or any of his heirs. Further, nothing was attached to the affidavit to exhibit that any notices sent

---

[Description of Property Abbr]
Parish of _____, State of Louisiana

Tax sale title to the above described property has been sold for failure to pay taxes. You have been identified as a person who may have an interest in this property.

Your interest in the property **will be terminated** if you do not file a lawsuit in accordance with law within [60 days] [6 months] of the date of this notice."

23

by CivicSource were in compliance with the form required by La. R.S. 47:2156(B)(2).[20]

Similarly, there is a letter in the record before us, which was sent by Ms. Cloud to Mr. Gibson on August 28, 2019, and whose form is in compliance with La. R.S. 47:2157(A)(2). Ms. Cloud testified in her deposition that, with help from her daughter, she located a potential Mississippi address for Mr. Gibson. She also confirmed that this was the only time that she attempted to contact Mr. Gibson with notice of the tax sale of the Property. Applying the reasoning we articulated in *Jon Loy*, we find that Ms. Cloud has not demonstrated any diligent efforts which would comply with the statutory directives that would satisfy the requirements of

---

[20] At the time of the 2016 sale, La. R.S. 47:2156(B)(2) provided the following:

The notice shall specify the property upon which the taxes are delinquent, the amount of taxes due, and the manner in which the property shall be redeemed and shall be sufficient if in the following form:

RE:
Property No. _____
Ward ___ Section No. ____ Assessment No. _____
Subd. _____ Lot _____

Dear Sir/Madam,

This is an important notice. Please read it carefully. We are writing to inform you that the property taxes for the above noted property were not paid, and tax sale title to the property was sold to a tax sale purchaser for delinquent taxes for the year(s) _____. You may redeem this property within three years [or other applicable redemptive period] from _____ by paying to the [name of tax collector] the following amount due stated in or enclosed with this document. The redemptive period will expire _____. Under some circumstances, the third party buyer may be entitled to take actual possession and full ownership of the property after this time.

After the expiration of the redemptive period the property cannot be redeemed. Continued possession of the property does not extend the redemptive period.

Please contact the [name of tax collector]if you believe that you received this notice in error, have sold or transferred this property, or for further information and assistance.

24

due process. Because there remain genuine issues of material fact, we find the district court did not err in denying the Boutans' motions for summary judgment.

*Service on the Curator*

Ms. Cloud directs our attention to La. R.S. 47:2155(B), which provides that "[a] certified copy of the tax sale certificate is [*prima facie*] evidence of the regularity of all matters regarding the tax sale and the validity of the tax sale." And, additionally, La. Const. Art. VII, § 25(A) with its similar language: "A tax deed by a tax collector shall be [*prima facie*] evidence that a valid sale was made." "Therefore," Ms. Cloud quotes, "the former property owner must then carry the burden of proving any defects in the tax adjudication proceedings." *NAR Sols., Inc. v. Kuhn*, 22-00425, p. 4 (La. 12/9/22), 354 So.3d 1176, 1178.

Furthermore, Ms. Cloud avers that personal service of the petition on the curator *ad hoc* was sufficient to satisfy due process requirements for both Mr. Gibson and his heirs. In support, Ms. Cloud points to the case of *Lepree v. Dorsey*, 22-0853 (La. App. 4 Cir. 8/11/23), 370 So.3d 1191. In that case, after several failed attempts at service upon the two defendants that had an interest in a tax sale property, the district court granted the plaintiff's motion to appoint a curator *ad hoc* to accept service for those defendants. As here, the curator was personally served with the petition and then filed an answer on behalf of the absent defendants, asserting all available affirmative defenses. After a diligent search, the curator was able to locate one of the absent defendants, Ms. Fields, prior to a summary judgment hearing to quiet title, but after the six-month prescriptive period for filing a suit to annul the sale, as provided by La. Const. Art. VII, § 25(C) and La. R.S. 47:2266(A)(2). There was some delay in the proceedings in order for the defendant to obtain counsel, but ultimately the district granted summary

judgment in favor of the plaintiff, naming her as the sole owner of the property in dispute.

On appeal, Ms. Fields asserted, *inter alia*, that the district court erred when it found that there was no genuine issue of material fact as to whether the plaintiff or the City of New Orleans had given post-sale notice or that they had complied with all of the steps necessary to provide notice six months in advance of the expiration of the redemptive period. We affirmed the district court's judgment and held that "Louisiana jurisprudence establishes that service on a curator [*ad hoc*], appointed in accordance with a statutory provision to represent the interests of an absentee defendant, is sufficient to satisfy due process requirements, despite any failure of the curator [*ad hoc*] to communicate with the absentee defendant." *Id.* at pp. 18-19, 370 So.3d at 1203 (first citing *Carter v. First S. Farm Credit, ACA*, 49,531, p. 11 (La. App. 2 Cir. 1/14/15), 161 So.3d 928, 935; and then citing *Nationstar Mortg. LLC v. Parham*, 51,102, p. 7 (La. App. 2 Cir. 2/15/17), 216 So.3d 231, 235).

We find that case to be distinguishable from the issues now confronting this Court. The most distinct difference is that, in *Lepree*, Ms. Fields was alive at the time the property she had an interest in became delinquent in its tax payments, and she took no steps to remedy those arrearages. In contrast, Mr. Gibson continued to pay *ad valorem* taxes for the Property every year that he was absent, up to and including the year in which he died. Additionally, the record reflects that once the Boutans were discovered to be Mr. Gibson's only remaining heirs, they immediately retained counsel, opened his succession, obtained a judgment of possession for the Property and filed their motion to intervene. This was all accomplished over a relatively short period of time. Moreover, although the

*Lepree* Court acknowledged that the tax sale certificate was *prima facie* evidence of the regularity of all matters regarding the tax sale, thereby shifting to the burden to Ms. Fields, we found that the *Lepree* record was devoid of any evidence to rebut that presumption except for argument of counsel in Ms. Fields' opposition to the motion for summary judgment. Per our previous discussion, we find the record before us does contain evidence that rebuts the presumption created by the tax sale certificate, thereby creating a genuine issue of material fact.

*Ms. Cloud's Motion for Summary Judgment*

Because the same issues of due process apply to Ms. Cloud's motion for summary judgment, we find that the district court was in error when it granted Ms. Cloud's motion for summary judgment, finding there to be no genuine issue of material fact as to her ownership of the Property.

*Attorneys' Fees*

The Boutans have requested that this Court award attorneys' fees pursuant to La C.C.P. art. 2164, which provides:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

Their argument is premised on what they describe as a significant amount of time spent and expenses incurred in bringing the trial court's error to light. We find this unpersuasive. As the Appellants in this case, the Boutans have no grounds to argue that this appeal is frivolous. Furthermore, we have already considered and denied the Boutans' request for attorneys' fees and costs in connection with its

27

previous writ application to this Court in *Cloud v. Gibson*, 22-0316 (La. App. 4 Cir. 7/6/22), 344 So.3d 253. This request is denied.

## DECREE

For all of the foregoing reasons, we reverse that portion of the district court's March 20, 2023 judgment, which granted summary judgment in favor of Ms. Cloud, naming her as the sole owner of the Property; we affirm that portion of the district court's judgment that denied the Boutans' motions for summary judgment; and we remand this matter for further proceedings consistent with this opinion.

**AFFIRMED IN PART**
**REVERSED IN PART**
**REMANDED**